MARK COHEN and CHARLES COHEN v. JAMES P. STEWART
and W. H. WHITEHEAD.

*Sale—Delivery—Vendor and Vendee.*

S, residing in North Carolina, being indebted to C, residing in Virginia, for goods sold, applied for further credit, which was refused unless he paid the account then due. Thereupon he executed to C a bill of sale for five hundred cords of wood, then at a point designated on the line of a railroad a hundred miles distant, being all the wood he had there, at a fixed price per cord. The sum realized to be placed to the credit of his account when C should sell the same. Thereupon C gave credit to S for "500 cords of wood, more or less, at $1.25 per cord." Subsequently S made an assignment of the wood in trust for his creditors; *Held*, that the transaction with C was an absolute sale, and no title passed to the trustee by virtue of the subsequent assignment.

(*Wittkowsky* v. *Wassen*, 71 N. C., 451; cited and approved).

CIVIL ACTION, tried before *Merrimon, Judge*, at Fall Term, 1887, of NASH Superior Court.

This action was brought to recover the value of certain wood mentioned in the complaint. It is alleged that the plaintiffs purchased the wood from the defendant Stewart, and that the latter afterwards undertook by deed of assignment to sell the same to the defendant, W. H. Whitehead, in trust, to resell the same, and with the proceeds of sale pay sundry debts of Stewart, in the deed mentioned.

By consent, a referee found the facts of the matter in controversy, upon which the case was submitted to the Court as follows:

7

1. In April, 1886, and prior thereto, the plaintiffs were doing business and trading under the firm name and style of M. Cohen & Son, in the city of Petersburg, State of Virginia. The defendant Stewart was trading and doing business at Battleboro, State of North Carolina, and had for some time past been dealing and trading with the plaintiffs.

2. That on the 21st day of April, 1886, the defendant Stewart was indebted to the plaintiffs for goods, wares and merchandise sold and delivered to him, in a large sum, to-wit: more than six hundred dollars. On April 21st, 1886, Stewart visited plaintiffs' place of business in Petersburg, and saw plaintiff Charles Cohen, his object being to buy more goods. At that time plaintiffs believed Stewart to be solvent.

3. The plaintiffs refused to sell him more goods unless he paid something on the account then due; he said he had no money, and was asked to give real estate security, which he refused. He stated he had no money then, but expected to get some so soon as he sold some wood and tobacco he had. That he expected to sell the wood soon, and get some money; plaintiffs replied, " this is too uncertain and indefinite;" and Stewart then proposed to give them a bill of sale for the wood and some tobacco; plaintiffs accepted the offer, and the following bill of sale was then executed, to-wit:

BATTLEBORO, N. C., April 22d, 1886.

"Messrs. M. Cohen & Son, of Petersburg, Va., bought of Joseph P. Stewart, of Battleboro, N. C., 500 cords of railroad wood at $1.25, $625, lying on the Atlantic Coast Line Railroad, between Battleboro, N. C., and Rocky Mount, upon which there is no encumbrance whatever. In consideration of one dollar to me paid by M. Cohen & Son, I sell and convey the above named lot of wood to M. Cohen & Son, the amount of which is to be placed to the credit of my account

with M. Cohen & Son, when M. Cohen & Son shall have sold the same and realized the money from the same.

"JOS. P. STEWART."

·A similar bill of sale for the tobacco was executed, except no price was named.

4. That the plaintiffs, after the bill of sale was executed, entered a credit on their books of 500 cords of wood, more or less, at $1.25 per cord, with postscript added, referring to the bill of sale. No receipt was given to Stewart for the wood.

5. The wood mentioned was all the wood owned by Stewart on the line of said railroad, and was on the said railroad line between Battleboro and Rocky Mount, being placed there to sell to the railroad company, and was distant from Petersburg about one hundred miles.

6. The wood was tagged or marked in Stewart's name, and remained so. Wood of this grade was worth from $1.50 to $1.60 per cord, and sometimes, to effect a sale, less was taken for it. The wood remained just as it was at the execution of the bill of sale. It was agreed that Stewart might sell the wood for and on account of plaintiffs, and they would try to sell it at the same time.

7. Plaintiffs endeavored soon after the bill of sale was executed to sell the wood to the railroad company, but did not effect a sale; Stewart did sell about sixty cords of the wood, and sent to plaintiffs the .check he received in payment for same. He remitted same, to be placed to his credit; he gave plaintiffs no notice of sale.

8. That some time afterwards Stewart made a deed of assignment to his co-defendant Whitehead, which was duly recorded; that defendant Whitehead shortly after took possession of said wood, being advised that it was embraced in the deed of assignment; that plaintiffs, so soon as they were

informed that Whitehead claimed the wood under the assignment, notified him that it was their property.

9. It was agreed that Whitehead should sell the wood and hold the proceeds. He did sell what remained, after the sixty cords previously sold by Stewart, amounting to 292 cords, and brought $413.14.

10. There was no cancellation, extinguishment or credit of plaintiffs' account by reason of the wood transaction other than the entries set out and stated in the evidence of Charles Cohen, who testified that he made the entries.

Upon consideration of the facts thus agreed upon, the Court gave judgment for the plaintiffs, and the defendant appealed.

*Mr. W. E. Daniels,* for the plaintiffs.
*Mr. Jacob Battle,* for the defendants.

MERRIMON, J. The plaintiffs contend that they purchased the wood in question absolutely from the defendant Stewart. The defendants on the other hand, contend that the plaintiffs did not so purchase it, but simply took it as a security for the debt, and hence, had only a mortgage on it, which not being registered as required by statute, is inoperative as to creditors of the mortgagor, and subsequent purchasers for value, and therefore, the title to it passed to the defendant Whitehead, by virtue of the deed of assignment to him executed by his co-defendant Stewart.

The facts of the matter in controversy are found settled. It is not our province to find other facts or draw inferences from those found. We must treat them as they appear, according to their just meaning, legal effect, and bearing upon each other. And thus treating them, do they import an absolute sale of the wood in question to the plaintiffs?

We think this question must be answered in the affirmative.

A sale of personal property implies the transfer of the absolute or general property in the thing sold, from the vendor to the vendee for a price in money, paid or agreed to be paid by the latter, or by some one for him, to the former, and the property thus passes by actual delivery thereof, or it passes without such delivery, when the parties certainly agree that it shall.

When there is an actual delivery, without an express agreement to pay a stipulated price, the law implies a promise to pay a reasonable price—the reasonable value of the property.

Generally, the property so sold must be designated, identified, separated, so that the particular property sold can be certainly known, else the sale is incomplete, and the contract of sale is executory in a material respect. Thus, if the vendor sell all the corn in a particular crib mentioned, for a particular price paid, or agreed to be paid, and presently deliver the same to the vendee, or agree that it shall at once pass without such actual delivery, the sale would be an absolute one; but if the vendor should agree to sell one hundred bushels for a price to be paid, to be taken from his particular crib, containing one thousand bushels, the sale would not be complete—the property would not pass at once—not until the one hundred bushels had been measured and set apart, because it could not, until such ascertainment, be seen what particular corn was sold. If, however, the vendor should sell his corn—all of it—in a particular crib, at the price of one dollar per bushel, and it was intended that it should pass to the vendee, the sale would be good as an absolute sale, and this is so, because it was intended that all the corn should pass, and the price per bushel is specified only for the purpose of ascertaining how much money was agreed to be paid. It is essential that the property sold can in some way be identified at the time of sale, if it is intended that it shall at once be absolute. *Wittkowsky* v. *Wassen*, 71 N. C., 451; Benjamin on Sales, §§ 1, 314, 318, 329, 332.

Now, in the present case, the defendant Stewart owed the plaintiffs a considerable debt, and he desired to increase it by the purchase of goods. The plaintiffs would not allow such increase, unless he would pay a part of the existing debt, and he was requested "to give real estate security." This he refused to do, but said he then expected to get money soon, for some wood and tobacco he had for sale, plainly implying that he expected to sell the same soon, and with the money thus realized he could pay a part of their debt against him. The plaintiffs said in reply, "this is too uncertain and indefinite." He " then proposed to give them a bill of sale for the wood." Nothing was said, however, of a conditional sale of it. It was not suggested that the plaintiffs should take and hold and sell the wood as a security for their debt—it was not proposed that they should take a mortgage of it. They "accepted the offer," and Stewart accordingly executed the "bill of sale" in which he says, without words of limitation or condition, that he *sold* to the plaintiffs, and they *bought* from him, "the lot of wood"—that is, "500 cords of railroad wood at $1.25, $625, lying on the railroad" named, between two designated places. The plain implication from the facts is, that he sold, and intended to sell, all the wood he had there, more or less. The plaintiffs gave him credit on their books for five hundred cords, "more or less," at the price specified, referring to the "bill of sale." The wood in question' was on the line of the railroad between the places named, and was all the wood he owned on the line of road mentioned. The price to be paid was agreed upon, to be paid not at once, but when the plaintiffs should sell and realize the money for the wood, by then crediting the same on Stewart's debt due to them. "It was agreed that Stewart might sell the wood, for and on account of plaintiffs," and he "did sell about sixty cords of it," and " send to plaintiffs the wood check he received in payment for same," and " he remitted same, to be placed to his credit." The

mere fact that such wood was worth "from $1.50 to $1.60 per cord" could not change the nature of the transaction. Indeed, it appears that such wood was sometimes sold for less, and it does not appear that the wood in question was worth, or that it, or any part of it, was sold for a greater price than that agreed to be paid for it; it seems that in fact it sold for less. The sale of the wood to the plaintiffs was an absolute one, and hence the supposed sale of it to the defendant Whitehead was inoperative. Stewart could not convey to him a valid title, because he had none himself. Judgment affirmed.

No error.                                        Affirmed.