MARION MANUFACTURING COMPANY *v.* R. G. BUCHANAN
*et ux.*

'(*Nashville.* December Term, 1906.)'

1. **ASSIGNMENTS OF ERROR.** For failure of court of chancery
   appeals to find certain facts cannot be considered by supreme
   court.

   An assignment of error that the court of chancery appeals erred in
   failing to find certain facts, which it had not even been requested
   to embrace in supplemental findings, cannot be considered by
   the supreme court. (*Post, p.* 244.)

2. **SALES.** Purchaser cannot resist payment for defects not com-
   municated to seller of a machine, when.

   Where, under a contract of sale of machinery, the seller could not
   be held liable for a breach of the warranty of soundness without
   notice of the defects and an opportunity to replace the defec-
   tive parts, the purchaser cannot resist the payment of the pur-
   chase price because of defects not communicated to the seller
   until after the destruction of the machinery by fire. (*Post,
   pp.* 244, 245.)

3. **CONDITIONAL SALES.** Loss by destruction of the property
   must fall on the purchaser, when. `

   Where, under a contract of conditional sale of machinery, complete
   and absolute by delivery of the machinery to the purchaser, the
   title was retained in the seller until the purchase price, uncon-
   ditionally promised, should be paid in full, the loss resulting
   from the destruction of the machinery by fire, without the neg-
   ligence of either party, before the notes for the purchase price
   were in fact executed, must fall on the purchaser.

   Cases cited and approved: Houston v. Dyche, Meigs, 76; Gamb-
   ling v. Read, Meigs, 281; Bank v. Vandyck, 4 Heisk., 617; Ma-
   chine Co. v. Cole, 4 Lea, 439; Meagher v. Hollenberg, 9 Lea, 392;

Manufacturing Co. v. Buchanan.

Burnley v. Tufts, 66 Miss., 48, 49; Tufts v. Wynne, 45 Mo. App., 42; Tufts v. Griffin, 107 N. C., 47; Humeston v. Cherry, 23 Hun, 141.

Cases cited and disapproved:  Grant v. United States, 7 Wall., 331; Jones v. Brewer, 79 Ala., 454, 547; Stone v. Wait, 88 Ala., 599; Randall v. Stone, 77 Ga., 501.

### FROM WILLIAMSON.

Appeal from the Chancery Court of Williamson County.—JOHN ALLISON, Chancellor.

JOHN T. ALLEN, for complainant.

EGGLESTON & EGGLESTON, for defendants.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

Complainant, a manufacturer, brought this suit against the defendants to recover the purchase price of a threshing machine.  The defendants resist the right to recover upon the ground that the machine had been consumed by fire within a few days after it was purchased, and that the fire originated in consequence of the defective construction of the machine.  Defendants also resist complainant's claim upon the ground that, when they purchased the threshing machine, complainant retained title thereto until the purchase money should

be paid in full, and that when the machine was destroyed by fire the sale had not been perfected and the legal title to the property was still in the complainant.

The wife of defendant R. G. Buchanan is also sued, for the reason that she bound her separate estate as security for the purchase price of the machine.

The chancellor and the court of chancery appeals overruled the contentions of defendants and pronounced a decree in favor of the complainant for the sum of $342.50, amount of the debt, and $34.25, attorney's fee, together with the costs of the cause. The decree also ordered the sale of the separate estate of Mrs. Sallie C. Buchanan, the wife, for the payment of said recovery. Defendants again appealed, and have assigned errors. It should have been stated that a cross bill was filed on behalf of the defendants against the complainant for the purpose of recovering the value of certain machinery and a stack of wheat straw destroyed by said fire in consequence of the negligence of complainant in furnishing a defective separator. The principal controversy waged on the record was, first, whether the threshing machine and separator were defective; and, secondly, if so, did the fire which destroyed the machinery result from this defect?

The facts found by the court of chancery appeals are that on the 13th of June, 1900, defendants ordered from complainant one Leader thresher, 33-inch cylinder, and 48-inch separator, and plain stacker, to be shipped to Nashville, Tennessee. The defendants agreed to receive

said machinery, pay the freight on the same, and execute their several notes, falling due, respectively, in one, two, and three years, for the sum of $114 each, with interest from date. In said order, the defendant Sallie C. Buchanan bound her separate estate to secure the payment of the purchase money notes. The machinery was shipped about the 15th of June, 1900, and was received at Nashville by the defendant Buchanan, who paid the freight on the same and carried it to his farm in Williamson county, about eight miles from Franklin. One Snow, acting for the complainant company, went with the defendant, and superintended the setting of the thresher in the field, and started it in operation.

The court of chancery appeals reports that the thresher was taken out on Wednesday, and worked on by Mr. Snow until the next day. On Friday Mr. Davis, the agent of the complainant company, visited the thresher, and on Saturday Buchanan and wife went to Nashville in accordance with an agreement with Davis to sign the notes. It appears, however, that Mr. Davis was absent, and the matter was, not closed for that reason though Buchanan and wife went to Nashville for that purpose, and only failed to sign the notes and complete the contract according to the order for the reason Davis was not there.

The court of chancery appeals finds that the machinery had been actually delivered to the defendants, set up by an agent of the complainant company, and started

118  Tenn.—16

in operation. The court of chancery appeals reports that within 4½ days after the machinery was delivered it was destroyed by fire. The particular defect averred in the answer which caused the destruction of the machinery was in the construction of the beaters in the separator. These beaters are cylinders, two in number, which are placed in the body of the separator, back of the main cylinder, and the ends of these cylinders are located in the metal bearings in which they revolve. The defect complained of is that there were spaces between the ends of the main body of the cylinder and the sides of the separator, and that these spaces should have been, but were not, protected by shields of metal, leather, or some other substance, and it was claimed that on account of the defect in not protecting the ends of these cylinders by shields, so as to keep out the straw and prevent it from wrapping around the ends of the cylinder, fire was thus generated, from the effects of which this machine was destroyed.

The court of chancery appeals finds there is evidence in the record tending to show that the ends of these cylinders were protected by shields, and that there is also evidence tending to show that they were not so protected. That court, however, finds the weight of the evidence shows they were not so protected, and to this extent were defective, as it allowed the straw to accumulate around these ends, and thus clog and impede the operation of the cylinders.

The court of chancery appeals, however, after a full

discussion of the evidence, reports that the fire which destroyed the machinery was not caused by this defect. Said that court:

"Without reasoning the .matter, further, we are unable to see that the weight of the evidence shows that the fire originated from the defect complained of, and we are not satisfied that the weight of the evidence does so show, but to our minds it is a mere conjecture. And therefore we are unable to conclude and find that the fire was caused by the negligence of the complainant and by reason of the defective machinery furnished by them."

The court of chancery appeals reports that it is unable to find that the destruction of this property was the result of the negligence of either party. The legal question then presented is: The machinery having been destroyed under this state of facts, upon whom does the loss fall? The court of chancery appeals approved the rule on this subject thus formulated in the Am. & Eng. Encyc. of Law (volume 6, p. 455):

"Where personal property is sold and delivered to the vendee under an agreement that the title is to remain in the vendor until payment, the loss or destruction of the property while in the possession of the vendee before payment, even without his fault, does not relieve him from the obligation to pay the price."

The following cases are cited for the text: *Burnley* v. *Tufts,* 66 Miss., 48, 5 South., 627, 14 Am. St. Rep., 540; *Tufts* v. *Wynne,* 45 Mo. App., 42; *Tufts* v. *Griffin,* 107 N. C., 47, 12 S. E., 68, 10 L. R. A., 526, 22 Am. St.

Rep., 863; *Planters' Bank* v. *Van Dyck*, 4 Heisk. (Tenn.), 617.

Counsel for defendant reassigns in this court the same errors assigned in the court of chancery appeals to the decree of the chancellor, with the additional assignment that the court of chancery appeals erred in failing to find that the defect in the thresher caused the fire. Counsel then reargues the facts and points out certain evidence which is not found in the report of the court of chancery appeals, nor was that court requested to embrace it in supplemental findings. The argument is able, but we are precluded from considering it.

Counsel further insists:

"Under the warranty that said machine was to be of good material and of good workmanship, suitable for the business, defendants could not be forced to accept said machine and settle for it until it came up to the warranty, and they would have the right to return the machine as soon as they found out the danger of using the machine in this defective condition; that is, as soon as they ascertained that it did not come up to the warranty. They would have this right, even after settlement in full. It would seem they would have a better right before settlement to refuse payment until the complainant had furnished and supplied them with a machine that was not defective and dangerous."

As already stated, the court of chancery appeals reported that said machine was defective in respect of the beaters or cylinders in the separator, but under the con-

tract, before the manufacturing company could be held liable for a breach of this warranty, they must have notice of it and an opportunity to replace the defective parts. When the machine was destroyed, no such defect had been complained of by the defendants, and hence the complainant company had no opportunity to repair the defect. The only question presented on this record is whether the loss of the machinery by fire must fall on the complainant or on the defendants. The court of chancery appeals has found that the defect now complained of in the machinery did not cause the fire, and the whole question is resolved into a question of liability, to be settled by the contract between the parties and the status of the machinery at the date of the fire.

The court of chancery appeals finds that the machinery had been actually delivered to the defendants, and that the defendants had offered to comply with the terms of the contract by the execution of the notes, and had gone to Nashville for that purpose but were prevented from executing the notes by reason of the absence of one Davis, agent of the complainant company. As' already stated, by virtue of the order given for the machinery by the defendants and its acceptance by the complainant, the title to the machine was reserved to the company until the purchase price should be fully paid.

Counsel for defendants assigns as error the decree of the court of chancery appeals in holding the defendants liable to pay for said machinery, especially as the title

remained in complainant, with full authority to repossess itself of said machinery in view of certain contingencies contained in the contract. It is argued that the contract was executory, and that defendant had not executed notes for the payment of the machinery, and had not mortgaged the same as security for the notes, as required by the contract. Counsel relies for the principle of law invoked on Mechem on Sales, 634, 635, as follows:

"The question of the effect of the accidental destruction of the property before it was fully paid for has also given rise to decisions apparently in conflict. The true rule, however, would seem to be that the loss follows the title. Hence, in the case of the conditional contract to sell, where no title passed until payment in full, the loss, unless otherwise provided by the contract, would fall upon the party agreeing to sell."

Counsel also cites *Bishop* v. *Minderhout & Nichols,* 128 Ala., 162, 29 South., 11, 52 L. R. A., 395, 86 Am. St. Rep., 134. In that case it appeared that Minderhout & Nichols sold to the defendant Bishop a piano, for which the latter executed notes in payment. These notes each stipulated that the piano should remain the property of the sellers, subject to their direction, until said notes were paid in full. The piano was delivered at the time of the sale into the possession of the defendant. Before the note sued on fell due on the 19th of August, 1898, the piano was destroyed by fire without the fault or negligence of the defendant. The court held

Manufacturing Co. v. Buchanan.

that the loss must fall on the purchaser. The court in its opinion referred to the text of the Am. and Eng. Encyc. (volume 6, p. 445), already quoted, which announces the contrary rule, and cites cases from Mississippi, Missouri, North Carolina, and Tennessee to sustain the text. The court, however, stated that that rule did not prevail in the State of Alabama. "The common law fixed the risk where .the title resides." 1 Benj. on Sales, sec. 319; *Jones* v. *Brewer,* 79 Ala., 547; *Grant* v. *United States,* 7 Wall. (U. S.), 331, 19 L. Ed., 194. In *Stone* v. *Wait,* 88 Ala., 599, 7 South., 117, it was held:

"Under an executory contract for the sale of a stock of goods at a price to be ascertained on taking an inventory, one-half to be paid in cash, the purchaser's note given for the residue, and the title retained by the seller until these stipulations are complied with, if the goods are accidentally destroyed by fire, after the inventory has been taken and the key of the store delivered to the purchaser, but before the necessary calculations have been made to ascertain the price, before any cash payment has been made, and before the purchaser's note has been given, the loss falls on the seller, and he cannot recover the stipulated price, nor the money deposited by the purchaser as a forfeit, but is excused from the performance of his contract, and the purchaser cannot recover the forfeit deposited by him."

Said the court, through Clopton, J.:

"Generally the law fixes the loss on the party in

whom the title resides. *Jones* v. *Brewer,* 79 Ala., 454; *Grant* v. *United States,* 7 Wall. (U. S.), 331, 19 L. Ed., 194. When personal chattels are sold on condition that the seller retains title until paid for and possession is delivered, the buyer may sell his interest, subject to this right of the vendor. The title does not vest in the buyer until performance of the condition, and, until it does pass, the risk of loss remains in the seller. 1 Benj. on Sales, secs. 425, 427."

A contrary rule was announced by the supreme court of North Carolina, in *Tufts* v. *Griffin,* 12 S. E., 68, 10 L. R. A., 526, 22 Am. St. Rep., 863, in which it was held that the destruction by fire before the maturity of a note given for the purchase price of chattels, which have been delivered to the vendee upon condition that the title shall remain in the vendor until such note is paid, will not cancel the maker's liability thereon. The supreme court of Mississippi, in *Burnley* v. *Tufts,* 66 Miss., 49, 5 South., 627, announced the same rule. The court therein said: "Burnley unconditionally and absolutely promised to pay a certain sum for the property, the possession of which he received from Tufts. The fact that the property has been destroyed while in his custody and before the time for the payment of the note last due, on payment of which his right to the legal title of the property would have accrued, does not relieve him of payment of the price agreed on. He got exactly what he contracted for, viz., the possession of the property and the right to acquire an absolute title

by payment of the agreed price. The transaction was something more than an executory conditional sale. The seller had done all he was to do, except to receive the purchase price. The purchaser had received all that he was to receive as the consideration of his promises to pay. The inquiry is not whether, if he had foreseen the contingency which has occurred, he would have provided against it, nor whether he might have made a more prudent contract, but it is whether by the contract he has made his promise · absolute or conditional. The contract was a lawful one, and, as we have said, imposed upon the buyer an absolute obligation to pay. To relieve him from this obligation, the court must make a new agreement for the parties, instead of enforcing the one made, which it cannot do."

But the supreme court of Georgia, in *Randall* v. *Stone & Co.*, 77 Ga., 501, has taken a different view. It was held as follows:

"A note given for the purchase money of an engine and boiler, contained the following clause: 'It is furthermore the express condition of the delivery of said engine and boiler to me that the title, ownership, or possession does not pass from said O. M. Stone & Co. until this note and interest is paid in · full, and they may take possession of said engine and boiler, and sell the same for my account, at any time, in case this note is not promptly paid, in which case I hold myself liable for any and all loss or damage caused by any failure to meet this note.' The engine and boiler were destroy-

ed by fire in the actual possession of the defendant, but before the maturity of the note or contract. Held, that the title remained in the vendors, and the loss fell on them; and a charge to the contrary was erroneous."

In *Humeston* v. *Cherry,* 23 Hun (N. Y.), 141, it was held:

"Where, on a sale of a pair of horses, title was to remain in the vendor until payment, and the vendee assumed control of the horses, though they remained in the vendor's stable and one of the horses died, it was held that the loss fell on the vendee."

In this State, however, the rule that the loss must fall on the purchaser has apparently been announced in *Planters' Bank* v. *Van Dyck,* in 4 Heisk., 617. It was held, on a sale of negroes "by a trustee under a trust to pay debts, without bill of sale, but with delivery, and a subsequent sale by parol, with delivery, to a third person, the first purchaser retaining the title until price paid, they being emancipated in the hands of the second purchaser by act of law and before payment of the price, that the loss fell upon the second purchaser; the retention of title operating as a lien." Said Judge Turney:

"The stipulation in the article of sale that the title to the slaves should remain in the vendor until the purchaser should pay the debt due to complainant was nothing more than a lien retained, a provision for security. By the sale and delivery, the purchaser had acquired such title and interest in the slaves as could at the instance of the vendor only have been enforced

by suit in chancery having for its object a specific per-
formance of the undertaking to pay the debt.   Other
creditors of the purchasers could have enforced such
performance and have applied any surplus to the extin-
guishment of debts due to them.   The possession, use,
and profits of the property had passed from vendor to
purchaser.   The vendor was not authorized to exercise
any act of ownership or control.   His only interest was
an equitable one."

· We are of opinion the true rule is that the loss must
fall on the purchaser:   First.   Because his promise to
pay the purchase price of the machinery was uncondi-
tional.   The machinery had been actually delivered, and
was being used by the defendant.   There was no pro-
vision in the contract that the purchaser was to be re-
leased from the payment of the price in the event the
machinery was destroyed by fire before payment of the
purchase money notes.   The retention of title in the
vendor was a mere security for the payment of the price.
Second.   The purchaser should sustain the loss, because
the machinery passed under his dominion and control,
and, if the rule were otherwise, the purchaser would
· have no incentive to take care of the property.   This
rule, moreover, is in accord with the policy of this State
in dealing with conditional sales.   In *Meagher* v. *Hollen-
burg*, 9 Lea (Tenn.), 392, it appeared that a married
woman contracted with a dealer for the purchase of
a piano, and signed an instrument of writing by which
she acknowledged receipt of the piano at a certain

valuation, with right to the use, and agreed to purchase it by monthly installments of a given sum, etc.; title being retained by the dealer until the payments were made in full, with the right on his part to resume possession in default of payments as stipulated and in certain other contingencies, the payments in that event to be in full for the use of the piano at the rate of the monthly installments of purchase money. This court held: ,

"The contract was not one of renting with the liberty of purchase. It was clearly a sale and purchase of the piano at a fixed price, to be paid in monthly installments of not less than ten dollars. The title was retained by the vendor until the purchase money was paid. Such a conditional sale is well known to our law and valid. *Houston* v. *Dyche,* Meigs (Tenn.), 76, 33 Am. Dec., 130. In such a case the vendor may, by virtue of his legal title, recover possession of the property at law after breach of the terms of the contract by the vendee, or in equity enforce the payment of the purchase money by a sale of the chattel. *Gambling* v. *Read,* Meigs (Tenn.), 281. If the purchaser had conveyed any portion of the purchase money, his interest in the property would enable him to resort to a court of equity after, and in a proper case before, a recovery at law by a vendor for an adjustment of the relative rights of the parties. The present contract undertakes to give the vendor, in default of regular payments by the vendee and in other cases specified, the right to

resume possession. Such a stipulation would not change the nature of the contract nor alter the relative rights of the parties." *Singer Machine Co.* v. *Cole*, 4 Lea (Tenn.), 438, 40 Am. Rep., 20.

In the latter case it was held a similar contract was not a renting of the machine, but a sale of it, with a reservation of the title to the piano as security for payment of the price.

We are therefore of opinion that in the case now being decided there was an absolute sale of the threshing machine to the defendants, that the sale had been consummated and was complete at the date of the fire, and the retention of title in the vendor was intended as a mere security for the payment of the purchase money. The destruction of the machinery by fire before the maturity and payment of the purchase price is a loss that must fall on the purchaser. The decrees of the chancellor and the court of chancery appeals are therefore affirmed.