The Acme Machine Works sold to the Auburn Lumber Company certain machinery and personal property for $2,770, of which sum $1,000 was paid in cash, and the balance of the purchase money was secured by two notes, due, respectively, 23 February and 24 April, 1903. On *Page 87 
these notes payments were made which reduced the balance due on 15 December, 1906, including interest, to $973.36. In the contract of sale it was stipulated that if the Auburn Lumber Company should fail to pay the notes, or either of them, at maturity, the entire debt should become due, and the Acme Machine Works might take possession of the property; but if the notes were paid at maturity, then the title, which, until the payment, should remain in the Acme Machine Works, should vest in the Auburn Lumber Company. The notes contained an absolute promise to pay the amount of money therein specified, with a stipulation as follows: "For the retention of title until payment of the amount due on the notes, together with all reasonable attorneys' (121) fees for collecting and necessary expense incurred, if not paid at maturity, at which time the said machinery shall be at the disposal of the Acme Machine Works, or order, and for the deficit we hold ourselves equally responsible until paid in full." All the property was to be delivered to the lumber company on the cars at Goldsboro, N.C. atthe same time, and the Acme Machine Works did so deliver all of it, except a dry-kiln, which it offered to deliver with the other property, but was requested by the Auburn Lumber Company not to deliver the kiln until called for by the lumber company, and it was accordingly held by the Acme Machine Works, at the special request of the lumber company, until the summer of 1903, when it was burned, without negligence or fault of the Acme Machine Works. Its value was $750. The purchase notes above described were indorsed for value to the Bank of Wayne, before their maturity and without notice of any infirmity in them, except such, if any at all, as appears on the face of the notes. This action was brought, under the statute, by the plaintiff (Whitlock), as a creditor of the lumber company, for the purpose of winding up its affairs, upon an allegation of insolvency and for the further purpose of having its assets applied to the payment of its debts. Cameron F. MacRae was appointed receiver in said proceeding. The Acme Machine Works, after the indorsement of the notes to the Bank of Wayne, assigned all of its assets to I. F. Dortch for the payment of its debts. The Bank of Wayne and Mr. Dortch thereupon filed a petition in this case, setting forth the facts, and praying judgment for the amount of the balance due on the said purchase notes by the lumber company to the bank as assignee of the Acme Machine Works. The receiver, Mr. MacRae, petitioned the court to be allowed to sell all of the property of the lumber company free of encumbrances, and asked that the lien of the Bank of Wayne for its alleged claim be transferred to the general fund in (122) court (or the proceeds of the sale), the latter to be held subject thereto, as the dry-kiln would have been if it had not been sold. The court so ordered. Mr. J. O. Carr was appointed referee to pass upon *Page 88 
the validity of the claim and lien of the Bank of Wayne. He reported substantially the above stated facts, and found as a conclusion of law that the bank had a lien for the balance of the notes held by it on the dry-kiln, and consequently on the fund in court. The court, upon exceptions by the receiver, confirmed the report, and gave judgment for the amount due on the notes, and the receiver appealed.
After stating the case: It cannot be well denied that, under the prior decisions of this Court, the transaction between the Acme Machine Works and the Auburn Lumber Company constitutes a conditional sale of the property described in their contract. The agreement was that the former should sell and the latter should buy the machinery and other property, to be delivered at once for the stipulated price. A part of the purchase money was paid in cash, and for the remainder the lumber company executed its notes, by which it absolutely and unconditionally promised to pay the sums therein specified. All of the property named would have been delivered immediately to the lumber company but for the request that the dry-kiln be retained by the Acme Company until the lumber company should be ready to receive it. The receiver of the latter company contends, upon the facts found by the referee, that he is entitled to a credit of $750, which was the value of the dry-kiln, upon the notes given for the purchase money of the property bought by the lumber company from the Acme Company, and which are now owned and held by the Bank of Wayne. We do not perceive upon what ground, legal or equitable, any such (123) claim can be successfully maintained. The lumber company has made an absolute promise to pay a certain sum of money, the consideration of which was the purchase of the property described in the contract. Why, then, should it not be compelled to perform its promise? It is a mistake to suppose that its liability depends upon whether the title did or did not pass unconditionally to it from the Acme Company. Its obligation arises out of the fact that it has promised to pay the money upon a sufficient consideration, and the said obligation is in no way affected by the state of the title to the property as between the parties — that is, whether vested conditionally or unconditionally.
The case is not distinguishable from that of Tufts v. Griffin,107 N.C. 47, in which is stated by Judge Shepherd, in his usual clear and vigorous style, the principle governing such cases. Quoting fromTufts v. Burnley, 66 Miss. 49 (in which will be found an able and well considered opinion adopted by this Court as a clear exposition of the law *Page 89 
which obtains with us), he says: "The transaction was something more than an executory conditional sale. The seller had done all he was to do, except to receive the purchase price; the purchaser had received all that lie was to receive as the consideration of his promise to pay. The inquiry is not whether, if he had foreseen the contingency which has occurred, he would have provided against it, nor whether he might have made a more prudent contract, but it is whether, by the contract, he has made his promise absolute or conditional. The contract was a lawful one, and, as we have said, imposed upon the buyer an absolute obligation to pay. To relieve him from this obligation the Court must make a new agreement for the parties instead of enforcing the one made, which it cannot do. As is said in the foregoing extract, the vendor has done all that he was required to do, and the transaction amounted to a conditional sale, to be defeated upon the nonperformance of the condition. The vendee had an interest in the property which he could convey, and which was attachable by his creditors, and which (124) would be ripened into an absolute title by the performance of the condition," citing 1 Wharton on Contracts, 617; Vincent v. Cornell,13 Mass. 296; Newhall v. Kingsbury, 131 Mass. 445.
We regard it as too late, at this time, to deny that the contract between these two companies was, in contemplation of law, a conditional sale. Ellison v. Jones, 26 N.C. 48; Ballew v. Sudderth, 32 N.C. 176;Parris v. Roberts, 34 N.C. 268. The same is the law in other jurisdictions. Ridgeway v. Kennedy, 52 Mo., 24; Harnway v. Wallace,18 Ill. 377; Dunbar v. Rawles, 28 Ind. 225; White v. Garden, 10 C. B., 919;Coghill v. R. R., 5 Gray (Mass.), 545. The subject is discussed and the later authorities cited in the recent case of Hamilton v. Highlands,144 N.C. 279.
It was not necessary, to effectuate the intention and purpose of the parties in making the contract, that there should have been an actual delivery of the dry-kiln, as there was of the other property. The kiln was held by the Acme Company, subject to the order of the lumber company, and was, therefore, constructively in its possession. Alman v. Davis,24 N.C. 12; Morgan v. Perkins, 46 N.C. 171; Cohen v. Stewart, 98 N.C. 97;Lumber Co. v. Wilcox, 105 N.C. 34, and especially Winberry v. Koonce,83 N.C. 351. The parties stood towards each other, in regard to their relative interests in the dry-kiln and in respect to any risk of its destruction by fire or other accidental cause, precisely as they would have stood if the kiln had actually been delivered.
It is familiar learning, and such an elementary and just principle as to have become axiomatic, that one party will not be permitted to plead his own act or fault, which has prevented the performance of a contract by the other party, in order to defeat the latter's recovery thereon. It *Page 90 
is just a simple application of the maxim that no man will be allowed to take advantage of his own wrong, and the doctrine has been strikingly illustrated in its application to cases analogous to this one. Buffkin(125) v. Baird, 73 N.C. 283; Harris v. Wright, 118 N.C. 422; Harwood v. Shoe, 141 N.C. 161. Judge Pearson said: "One who prevents the performance of a condition, or makes it impossible by his own act, shall not take advantage of the nonperformance." NavigationCo. v. Wilcox, 52 N.C. 481. So, in Harwood v. Shoe, supra, it was said: "It would be against good morals, as well as law, to allow plaintiffs to profit by their wrongful acts, although they were not parties to the contract." (Nemo ex suo delicto meliorem suam conditionem facerepotest.) Here it appears that the lumber company, by its own request, prevented the delivery of the kiln. Will it now be heard to say that the resulting loss should fall upon the Acme Company, which was ready and willing at all times, even up to the very moment of the fire, to deliver it, when, if the delivery had been made, as originally contemplated and agreed, no loss would have occurred? Such a proposition cannot be entertained for a moment. It would be grossly inequitable if we should so hold. The lumber company must abide by the consequences of its deliberate act, which has entailed loss upon it, and not be permitted to shift the responsibility for the loss to the Acme Company, which was absolutely without any fault. The correct principle is stated and elucidated in 1 Parsons on Contracts (9 Ed.), p. 581, as follows: "If the contract be to deliver the thing ordered at the residence or place of business of the buyer, the seller is liable, although such delivery becomes impossible, unless it becomes so through the act of the buyer. If the seller refuses to deliver it at a time and place agreed on, and it perish afterwards without his fault, he is liable for it; but if he be ready, and the vendee wrongfully refuse or neglect to receive it, the seller is not liable, unless the thing perish through his gross and wanton negligence." As we have shown, there was no neglect or fault on the part of the Acme Company.
(126) This being the situation with reference to the title of the kiln, the principle of Tufts v. Griffin, supra, most clearly applies. That case is cited with approval in Tufts v. Wynne, 45 Mo. App. 42, in which the same question we have here was presented, and an analogy is there drawn between a conditional sale of personal property and a contract to sell land, it having been held by many courts, in accordance with a well settled principle of equity, that in the latter case the loss, if any of the property is destroyed or diminished in value by accidental causes, falls upon the vendee, citing Snyder v. Murdock, 51 Mo., 175; Walker v. Owen,79 Mo., 509; Martin v. Carver, 1 S.W. 199. We have lately announced and applied the same principle, as to land, in Sutton v. *Page 91 Davis, 143 N.C. 474, where the leading authorities will be found carefully collected and lucidly considered by Justice Hoke, at page 484.
The general principle of liability on notes given for the purchase money of personal property, where title is retained as a security for payment, is clearly stated in Barrows v. Anderson, 3 Cent. Law Journal, 413, as follows: "But the question here is, At whose risk was the property, and who must bear the loss? The purchaser, by his note, obligated himself to pay the price at a given time; there is no condition or contingency expressed in the note upon which he can avoid payment, and the question is whether the law will supply such a condition. There is no doubt but that the title and right of property, by the terms of the note, remained in the seller, while the possession and right of possession were with the defendant and the seller could not assert any claim to it until the buyer made default. The seller held the naked title subject to the interest of the buyer, i.e., the contingent right to a title which would vest absolutely on payment of the price, without any further act on the part of the seller. The right to the use of the machine for two years, with the contingent right to a perfect title upon the payment of the price, constituted the consideration of the note."
The real and substantial nature of the transaction, for the (127) purpose of determining who should bear the loss, is that of mortgagor and mortgagee, or lienor and lienee. The contract, it is true, creates technically a conditional sale, but the vendor, in fact, only retains the legal title as a security in equity, and the title otherwise passes to the vendee with a lien for the purpose named. Hamilton v. Highlands,144 N.C. 279. The intention of the law, as embodied in the recent statutes of registration, but emphasizes this view of the relation of the parties(Brem v. Lockhart, 93 N.C. 191), when we come to determine their legal and equitable rights. It is not our purpose to diminish in the least degree the rights of either party in the property as fixed by the former decisions of this Court, but only to look at the transaction, as regards the question before us, according to its true and essential character, and to administer justice under the fundamental maxims of the law.
If we should decide that the Acme Company was holding the kiln for the lumber company as its bailee, our conclusion would not be affected or changed, as, even in that case, there being no negligence shown on the part of the former company, but it being found that it was without any fault whatever, it could not be adjudged liable for the loss.
Some of the cases cited by the learned counsel for the receiver, in their well prepared brief, can easily be distinguished from the one at bar; and the other authorities they rely on, which apparently support their position, are in direct conflict with our decisions and the best considered cases on the subject decided in other courts. They are, in our *Page 92 
opinion, contrary to both reason and a proper conception of what should, in accordance with good conscience and sound morality, be considered as the relative rights of the parties. The equity of the case is clearly with the Acme Company, and the law, we believe, is in harmony with the right.
(128) There may be another ground upon which the bank can succeed, as suggested by its counsel, but we need not and do not consider it, as the point already decided is sufficient to dispose of the case in its favor.
The learned referee, who so intelligently tried the case, and who has stated his findings of fact, and the law arising thereon, with such remarkable clearness, was right in his conclusion, as was the able presiding judge, who confirmed his report and gave judgment accordingly.
We find no error in the record.
Affirmed.