[No. 17850. *En Banc.* February 16, 1925.]

## HOLT MANUFACTURING COMPANY, *Respondent,* v. LEON J. JAUSSAUD *et al., Appellants.*[1]

SALES (167, 182)—CONDITIONAL SALES—TITLE—DESTRUCTION OF PROPERTY—REMEDIES OF SELLER—LIABILITY OF BUYER. Under the rule that no title passes under a conditional sale of personal property, reserving title in the seller until full performance by the buyer, upon the destruction of the article by fire, there is a total failure of consideration and the loss must fall upon the seller, and the buyer cannot be held for the unpaid part of the purchase money.

TOLMAN, C. J., BRIDGES, and PARKER, JJ., dissent.

Appeal from a judgment of the superior court for Walla Walla county, Mills, J., entered June 21, 1922, in favor of the plaintiff, in an action on contract, tried to the court. Reversed.

*Sharpstein, Smith & Sharpstein,* for appellants.

*Evans & Watson* and *Hamblen & Gilbert,* for respondent.

FULLERTON, J.—The contract between the parties to this action was in the form of a written order made by appellants, Jaussaud, and accepted by respondent, the Holt Manufacturing Company, for the purchase and sale of a particularly described Caterpillar Gas Combined Harvester. The writing recites the sale of the harvester to appellants and provides that it is to be shipped to them at a certain railroad station in eastern Washington. The appellants agreed in the writing to pay therefor $4,550: One Hundred dollars was paid in cash on the execution of the contract, and three hundred additional was agreed to be paid on the arrival of the harvester at the station; $2,250 August 1, 1921,

[1]Reported in 233 Pac. 35.

and $1,900 August 1, 1922, the deferred payments drawing interest. The contract further provided that,

"The undersigned (appellants) hereby expressly agree to execute notes for the above deferred payments and to give as security therefor a first mortgage upon said caterpillar combined harvester herein mentioned on arrival at the station designated above. . . . Said mortgage shall be in the usual form and shall require the mortgagor to pay all taxes assessed against said caterpillar combined harvester together with all other liens; to keep the same insured against loss or damage by fire from the time of its receipt until the payments are fully made. Insurance policy to read 'loss, if any, payable to Holt Manufacturing Company, Stockton, California, mortgagee, as its interest may appear.' .
. . Should the undersigned receive said caterpillar combined harvester without executing the notes and mortgage above mentioned he hereby waives all claims under said mortgage. . . . And it is hereby expressly agreed that the Holt Manufacturing Company does not part with the title to the said Caterpillar combined harvester but retains and holds the title and ownership thereof absolutely until said notes and mortgage are executed and delivered."

In due course, the harvester was shipped to the designated station, where it was unloaded and put into possession of appellants, at which time they were requested to sign the already prepared notes and mortgage provided for by the contract, but they did not then sign them, requesting that they be sent to Walla Walla for that purpose. In due course, they were so forwarded and appellants were again requested to sign them, but they refused to do so, because, as they claimed, the mortgage did not comply with the terms of the original agreement. Meanwhile appellants had taken the harvester to their farm, set it up and had done two or three days' work with it, when it was totally destroyed by fire without their fault. The notes and mortgage were never executed. The first deferred

payment of $2,250 becoming due and remaining un-paid, respondent, under the terms of the contract, de-clared all of the deferred payments due and sued there-for, the suit being based upon the contract from which we have quoted.

The chief defense was that, at the time the machine was destroyed, the title thereto was in respondent, and that the consideration failed because of the destruc-tion of the harvester. When all of the testimony had been taken, respondent moved that the case be with-drawn from the jury and for judgment in its favor, and at the same time appellants made a like motion, and by agreement the case was taken from the jury and left to the determination of the court, which en-tered judgment for respondent, from which appeal is taken.

Appellants in their brief put the issue as follows:

"A single question is then presented to this court, whether under conditional sale contract where the ab-solute and complete title to the property is vested in the seller, and where, before any payments become due on the part of the prospective purchaser, the property is accidentally and without fault destroyed by fire, the loss falls upon the owner or the prospective pur-chaser."

Where there is an ordinary executory contract of sale of a specific chattel, the general rule is that, if the property agreed to be sold is destroyed before the consummation of the sale, the loss will fall upon the vendor because the title is in him; in other words, un-der such circumstances the loss follows the title.  24 R. C. L. 494.  Thus, if two parties enter into a con-tract, one agreeing to sell and the other to purchase a designated chattel, payment to be made at the time of delivery, and before the agreement is consummated by delivery the article is destroyed, the loss must be

borne by the seller, and he has no rights against the purchaser, nor has the latter any rights against him. Hence, it becomes essential to determine whether the same rule applies to a contract of conditional sale. The important parts of the present contract were that appellants agreed to pay a designated sum at certain fixed periods. When the harvester was received by them, they were to execute notes evidencing the deferred payments and secure the same by a mortgage on the harvester. Upon that being done the complete title to the machine would vest in them. The title to the harvester was to remain unconditionally in respondent until payment was made, either by giving the notes and mortgage or otherwise. Appellants were to have, and actually did have, possession of the harvester, but it was plainly the intention of the parties that the title should remain in respondent until it was paid for. The whole transaction might easily stand upon the written contract, even though the notes and mortgage were never given; in fact, it seems to have been contemplated that that might be the situation, for the contract provides: ''Should the undersigned (appellants) receive said caterpillar combined harvester without executing the notes and warranty above mentioned he hereby waives all claim under said mortgage,'' but, in that event, it further provided the title was not to pass until payment was actually made.

The question then is, upon whom does the loss rest under such a contract.

While the weight of authority seems to be that the purchaser must bear the loss, that rule is generally sustained where a different rule obtains than obtains in this state as to the nature and effect of conditional sales contracts. The following authorities support the doctrine: 24 R. C. L. 494; 6 A. & E. Ency. Law 455; *Burnley v. Tufts,* 66 Miss. 46, 5 South. 627, 138 Am.

St. 900; *Marion Mfg. Co. v. Buchanan,* 118 Tenn. 238, 99 S. W. 984; *Hollenberg Music Co. v. Barron,* 100 Ark. 403, 140 S. W. 582, Ann. Cas. 1913C 639, 36 L. R. A. (N. S.) 594; *Whitlock v. Auburn Lumber Co.,* 145 N. C. 120, 58 S. E. 909; *Exposition Arcade Co. v. Lit Bros.,* 113 Va. 574, 75 S. E. 117; *Tufts v. Wynne & Thompson,* 45 Mo. App. 42; *LaValley v. Ravenna,* 78 Vt. 152, 62 Atl. 47, 2 L. R. A. (N. S.) 97.

While the various authorities in support of the view differ somewhat in their reasoning, the general trend is expressed in *Burnley v. Tufts, supra,* where the court said:

"Burnley unconditionally and absolutely promised to pay a certain sum for the property the possession of which he received from Tufts. The fact that the property had been destroyed while in his custody, before the time for the payment of the notes last due, on payment of which only his right to the legal title of the property would have accrued, does not relieve him of payment of the price agreed on. He got exactly what he contracted for, viz; the possession of the property, and the right to acquire an absolute title by payment of the agreed price. The transaction was something more than an executory conditional sale. The seller had done all he was to do except to receive the purchase price; the purchaser had received all he was to receive as the consideration of his promises to pay. The inquiry is not whether, if he had foreseen the contingency which has occurred, he would have provided against it, nor whether he might have made a more prudent contract, but it is whether by the contract he has made his promise is absolute or conditional. The contract made was a lawful one, and, as we have said, imposed upon the buyer an absolute obligation to pay. To relieve him from this obligation, the court must make a new agreement for the parties, instead of enforcing the one made, which it cannot do."

24 R. C. L. 494, *supra,* discussing the question, says:

"The authorities are not in accord as to the liability of the buyer for the unpaid part of the agreed price

where the property is accidentally destroyed while in his possession and without his fault. According to the better view if the buyer has entered into an unconditional promise to pay the price, the fact that the property is accidentally destroyed while in his possession does not relieve him from liability for the unpaid and subsequently accruing installments of the price; and this is held true though the contract of sale did not contain an express promise on the part of the buyer to pay the price. . . . The reason for this view is that the buyer's right to the possession before default and his right to acquire the title by the payment of the agreed price constitute a valid consideration for his promise to pay which is not affected by the destruction of the property, and distinguishes the case from the ordinary executory contracts of sale under which the loss falls on the seller in case the property is destroyed before the title has passed. On the other hand the theory that the risk follows the title, the view is taken, in a number of jurisdictions, that, if the property is accidentally destroyed while in the hands of the buyer, the seller has no right to recover installments of the price thereafter accruing.''

The other rule is supported by Mechem on Sales, vol. 2, p. 524; *Bishop v. Minderhout,* 128 Ala. 162, 29 South. 11, 86 Am. St. 134, 52 L. R. A. (N. S.) 395; *Cobb v. Tufts,* 2 Tex. Civ. App. 140; *Whigham v. Hall & Co.,* 8 Ga. App. 509, 70 S. E. 23; *Moon v. Wright,* 12 Ga. App. 659, 78 S. E. 141; *Randle v. Stone & Co.,* 77 Ga. 501; *Arthur & Co. v. Blackman,* 63 Fed. 536; 5 Elliott on Contracts, § 4986; Benjamin on Sales (Bennett), 7th ed., par. 328.

So eminent an authority as Professor Freeman, in a case note in 138 Am. St. 903 (1. c. 905) said:

''We incline to the view taken by the minority decisions, not because we sometimes doubt the wisdom of majorities, but because we know that minorities are not always wrong. We have only to consider the rule of conditional sales generally, in order to arrive at a logical conclusion whether the majority is in the right

and the minority in the wrong, or vice versa, on the statute under consideration. We find in Benjamin on Sales, Bennett's seventh edition, paragraph 328, the following rule: 'Where the buyer is by the contract bound to do anything as a condition either precedent or concurrent, on which the passing of the property depends, the property will not pass until the condition be fulfilled, even though the goods may have been actually delivered into the possession of the buyer.' It is therefore apparent that what a vendee buys is property, not solely the title to or the possession thereof; and if, without his fault, the property is destroyed, there is, in our opinion, an entire failure of consideration.''

Professor Elliott, in the section cited from his work, *supra,* reasons as follows:

''Where there is a sale of specific goods the parties must have contemplated that there was something in existence to be sold, and, if goods agreed to be sold perish or are destroyed without fault of the buyer or seller, before the risk passes to the buyer, the agreement is thereby avoided.  .  .  .  there being no subject-matter, an essential element of a valid sale is lacking.''

So Mechem on Sales, *ubi supra:*

''The question of the effect of the accidental destruction of the property before it was fully paid for has also given rise to decisions apparently in conflict. The true view would seem to be that the loss follows the title. Hence in the case of a conditional contract to sell, where no title passes until payment in full, the loss, unless otherwise provided by the contract, would fall upon the party agreeing to sell; while in the case of a sale upon condition subsequent the loss would fall upon the purchaser; and so the decisions are, when not complicated by other facts.''

In the greater number of the cases supporting the majority rule it is said that the purchaser has a qualified title to the property, and the seller holds the title

22—132 WASH.

merely as security for the purchase price; some courts stating that the contract is equivalent to a chattel mortgage. But a different rule has been established in this state regarding the character and effect of contracts of conditional sale of chattels. We have consistently held that, under the statutes of this state, no title whatever passes under a conditional sales contract of personal property, and that the relation of debtor and creditor is not created. In *Winton Motor Carriage Co. v. Broadway Automobile Co.,* 65 Wash. 650, 118 Pac. 817, 37 L. R. A. (N. S.) 71, it was said that:

"It seems inconceivable that the absolute title remains in the seller and at the same time the purchase price be an enforceable debt obligation against the purchaser."

And in the following cases we have stated and reiterated that one who takes property under a conditional bill of sale is not the owner, and has no element of title: *Stewart & Holmes Drug Co. v. Reed,* 74 Wash. 401, 133 Pac. 577; *Norman v. Meeker,* 91 Wash. 534, 158 Pac. 78, Ann. Cas. 1917D 462; *Peterson v. Chess,* 92 Wash. 682, 159 Pac. 894; *Barbour v. Hodge,* 99 Wash. 578, 170 Pac. 115.

We have, therefore, aligned ourselves against the decisions of those jurisdictions holding that the title is merely reserved as security, or that the vendee has a qualified property in the title.

Nor can we agree with the reasoning of those courts that have placed their conclusions on the ground that the purchaser has absolutely bound himself to buy and pay for the article, and that if it is destroyed while in his possession, that is no reason why he should be relieved. On the contrary, the promise to buy and pay for the article is mutual and interdependent with the promise of the vendor to sell and deliver the article. The promises being mutual and interdependent, when

the one cannot comply, the other is under no obligation to comply. See *Hawley, Dodd & Co. v. Kenoyer,* 1 Wash. Terr. 609, and *Hogan v. Kyle,* 7 Wash. 595, 35 Pac. 399, 38 Am. St. 910.

Our conclusion is, therefore, that the loss must fall on the holder of the title, and since the title was at all times in the vendor, the vendee cannot be held for the unpaid part of the purchase price.

The judgment is reversed.

MACKINTOSH, HOLCOMB, MITCHELL, and MAIN, JJ., concur.

ASKREN, J. (concurring)—For the reasons stated in my concurring opinion in *Ashford v. Reese, ante* p. 649, 233 Pac. 29, I concur.

BRIDGES, J. (dissenting)—Most of the members of the court are of the opinion that, under a conditional sales contract, the loss must follow the title, and that since we have held that, under a conditional sales contract, the purchaser obtains no title or interest in the thing purchased, the loss must fall upon the vendor because he has both the legal and equitable title. This view has caused us to review our cases holding that the purchaser, before completion of the contract, does not obtain any interest in the property purchased. I have long been of the opinion that these cases are unsound and against the best interests of the people of this state. However, if I could be convinced that to overturn them would be greatly detrimental, I would be in favor of adhering to them. But I am unable to see that any considerable harm can follow the overruling of those cases; on the contrary, I can see great benefit in so doing and in laying down a rule which is supported by almost all of the decisions, which is, that the purchaser under such a contract obtains an interest

in the property purchased, at least to the extent of the payments made on the purchase price.

Since it has become necessary to determine whether we will adhere to our previous decisions or overrule them, I am in favor of the latter, for the reasons given by Judge Tolman in his dissenting opinion in the case of *Ashford v. Reese, ante* p. 649, 233 Pac. 29.

I am, however, of the opinion that there is no reason back of the rule which requires the loss to follow the title. My investigation of this question (which includes the reading of nearly all the cases) convinces me that the loss should be on the purchaser, not because he has or has not any interest in the property purchased, but because he has agreed to purchase and has agreed to unconditionally pay the purchase price. I cannot see any reason why one who has agreed to pay the purchase price and who has received possession of the thing purchased should be able to deny his agreement simply because the property has been destroyed, lost or damaged while in his possession. Suppose the property involved in this case had not been completely destroyed but had been damaged five, ten or twenty per cent of its value, would the majority still hold that the vendor must stand the loss and that the purchaser may repudiate his agreement, refuse to carry out his contract and recover what has already been paid by him? If, during the life of the contract, the property increases in value, the purchaser gets the benefit thereof, and if it decreases in value, or is by the elements damaged, he ought to bear the loss. If the property be real estate and be affected by a stream of water, and during the life of the contract accretion adds to the property, he thereby benefits, why should he not stand the loss if the same stream should cut off or destroy a part of the land which he has agreed to

purchase? The rule contended for by me is stated in 24 R. C. L. 494, as follows:

"The authorities are not in accord as to the liability of the buyer for the unpaid part of the agreed price where the property is accidentally destroyed while in his possession and without his fault. According to the better view if the buyer has entered into an unconditional promise to pay the price, the fact that the property is accidentally destroyed while in his possession does not relieve him from liability for the unpaid and subsequently accruing installments of the price; . . ."

The case of *Burnley v. Tufts,* 66 Miss. 46, 5 South. 627, is probably the leading case on the subject and is referred to by nearly all of the other cases. There the court said:

"Burnley unconditionally and absolutely promised to pay a certain sum for the property the possession of which he received from Tufts. The fact that the property has been destroyed while in his custody and before the time for the payment of the notes last due, on payment of which only his right to the legal title to the property would have accrued, does not relieve him of the payment of the price agreed on. He got exactly what he contracted for, viz, the possession of the property, and the right to acquire an absolute title by payment of the agreed price. . . . the seller has done all that he was to do except to receive the purchase price; the purchaser has received all that he was to receive as the consideration of his promises to pay. . . . To relieve him from this obligation the court must make a new agreement for the parties, instead of enforcing the one made, which it cannot do."

The following additional cases support the view I have tried to express: *Marion Mfg. Co. v. Buchanan,* 118 Tenn. 238, 99 S. W. 984; *Hollenberg Music Co. v. Barron,* 100 Ark. 403, 140 S. W. 582, Ann. Cas. 1913C 659, 36 L. R. A. (N. S.) 594; *Whitlock v. Auburn Lumber Co.,* 145 N. C. 120, 58 S. E. 909; *Exposition Arcade*

*Co. v. Lit Bros.*, 113 Va. 574, 75 S. E. 117; *Tufts v. Wynne & Thompson*, 45 Mo. App. 42; *LaValley v. Ravenna*, 78 Vt. 152, 62 Atl. 47, 2 L. R. A. (N. S.) 97.

I am therefore of the belief that this case ought to be decided without reference to our former decisions concerning the location of the title to the property sold. I dissent.

PARKER, J., concurs with BRIDGES, J.

TOLMAN, C. J. (dissenting)—For the reasons set forth in my dissenting opinion in the case of *Ashford v. Reese, ante* p. 649, 233 Pac. 29, I dissent here.