LUCILE COOPER v. NORFOLK SOUTHERN RAILROAD
COMPANY ET AL.

(Filed 5 March, 1913.)

1. Carriers of Passengers—Tickets—Stipulations Limiting Liability
   —Intrastate Tickets—Void Stipulations.

   Stipulations upon a railroad ticket, limiting the liability of
   the carrier in a specified sum "unless a greater value has been
   declared by the owner and excess charges paid thereon at the
   time of taking passage," and similar provisions in a bill of lading
   for the transportation of freight, are held in this State to be
   void as an attempt on the part of the carrier to contract against
   its own negligence; and such stipulations are not enforcible on
   intrastate tickets or bills of lading.

2. Same—Interstate Tickets—Decisions of the United States Su-
   preme Court.

   The decisions of the Supreme Court of the United States are
   controlling as to the validity of stipulations on tickets of com-
   mon carriers limiting their liability for baggage, and similar
   provisions on their bills of lading or receipts for the transporta-
   tion of freight or express, only where the tickets and bills of
   lading are interstate.

APPEAL by defendant from *Daniels, J.,* at September Term,
1912, of VANCE.

This action is to recover damages for the loss of a diamond,
which the defendant admits was a part of the baggage of the
plaintiff.

Plaintiff introduced testimony tending to show that she re-
sided in Texas, and being on a visit at Henderson, N. C., she
went with another or others from Henderson to Morehead City;
that her trunk was packed and delivered, locked and in good
condition, to the S. A. L. Railway, and checked by it through
to Morehead late in the afternoon of 6 July, 1911; that her
kinsman purchased a return ticket for her, which she signed
when brought to her at a german about 9 P. M., 6 July; that
her trunk contained her wearing apparel, a silver jewel case in
which were a diamond star pendant and a belt buckle, which
she was carrying for her own personal use, the diamond having
been given to her by her father and cost $450, and owing to

subsequent advances in diamonds was now worth $500; that she left Henderson about 2 A. M., the 7th, and went on the first train leaving after purchase of her ticket, via S. A. L. to Raleigh, Southern to Goldsboro, and N. and S. to Morehead, arriving there about 11 A. M. the 7th; that she gave her check to porter of Norfolk Southern Railroad just before arriving at Morehead, at his request, and the trunk was delivered to her room in the Atlantic Hotel, owned by defendant Norfolk and Southern Railroad, promptly after her arrival there, and when so delivered its lock was broken and hanging down. Upon examination she found the jewel case had been broken open and the breastpin and belt buckle gone, and that she at once made complaint to the authorities of the hotel and of all three of the railroads and demanded pay for her loss.

The stipulation in the ticket relied on to limit the liability of the defendant is as follows:

"5th. Baggage liability is limited to wearing apparel not to exceed one hundred dollars ($100) in value for a whole ticket, and fifty dollars ($50) for a half ticket, unless a greater value has been declared by the owner and excess charges paid thereon at the time of taking passage."

The following verdict was returned by the jury:

"Was the property of the plaintiff lost through the negligence of the Norfolk and Southern Railway Company? Answer: Yes.

"What amount of damages, if any, is plaintiff entitled to recover? Answer: $450."

Judgment was rendered thereon in favor of the plaintiff, and the defendant excepted and appealed.

*A. C. & J. P. Zollicoffer for plaintiff.*
*W. B. Rodman and T. T. Hicks for defendant.*

ALLEN, J. The question presented by the appeal is as to the validity of the stipulation in the ticket limiting liability, and as the jury has found that the damage sustained was the result of negligence, and the transaction is intrastate, it is controlled by *Mule Co. v. R. R.,* 160 N. C., 215.

161—26

The cases of *Express Co. v. Croninger, R. R. v. Latta,* and *R. R. v. Miller,* relied on by the defendant, in which opinions were filed by the Supreme Court of the United States on 6 January, 1913, decide that a stipulation in a bill of lading, similar to the one before us, is valid and limits the recovery, and these decisions would be controlling with us if this was an interstate shipment, made upon a bill of lading, but as it is not, we follow them only in so far as they commend themselves to our judgment.

The leading opinion was filed in the *Croninger case,* and *Mr. Justice Lurton* quotes with approval from *Solon's case,* 169 U. S., 133, discussing the effect of State legislation: "They are not, in themselves, regulations of interstate commerce, although they control in some degree the conduct and the liability of those engaged in such commerce. So long as Congress has not legislated upon the particular subject, they are rather to be regarded as legislation in aid of such commerce, and as a rightful exercise of the police power of the State to regulate the relative rights and duties of all persons and corporations within its limits"; and from *Hughes v. R. R.,* 191 U. S.: "While under these provisions it may be said that Congress has made it obligatory to provide proper facilities for interstate carriage of freight, and has prevented carriers from obstructing shipments on interstate lines, we look in vain for any regulation of the matter here in controversy. There is no sanction of agreements of this character limiting liability to stipulated valuations, and until Congress shall legislate upon it, is there any valid objection to the State enforcing its own regulations upon the subject, although it may to this extent indirectly affect interstate commerce contracts of carriage?"

In the *Hughes case* a judgment of the Supreme Court of Pennsylvania was affirmed which permitted the recovery of all damages caused by negligence, notwithstanding a clause in a bill of lading limiting the liability.

It is conceded in the opinion that these two cases establish two propositions:

(1) That until Congress has legislated upon the particular subject, the State may regulate the relative rights and duties

of all persons and corporations within its limits and may enforce its own policy, although connected with an interstate shipment.

(2) That up to the time of the decision in the *Hughes case* there was no sanction in the legislation by Congress of agreements limiting liability to stipulated valuations.

The Court assumes that these two cases are decisive of the question that the States may enforce their policy as declared by statute or general law, and may award full damages for loss, the result of negligence, notwithstanding a stipulation limiting liability, unless the rule has been changed by act of Congress enacted subsequent to the decisions, and concludes that the Carmack amendment of 1906 has this effect.

The Carmack amendment is as follows: "That any common carrier, railroad, or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered, or over whose line or lines such property may pass; and no contract, receipt, rule or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: *Provided,* that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law. That the common carrier, railroad, or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the loss, damage, or injury shall have been sustained, the amount of such loss, damage, or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof."

If the Supreme Court of the United States had not held otherwise, we would conclude that this amendment could not, by any rule of construction, have the effect of giving validity to a contract limiting liability for negligence, although contained in a bill of lading.

It purports to deal only with the carrier receiving the goods —the initial carrier—and the common-law right of action against the connecting carrier is preserved by the proviso, "That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law."

And as to the initial carrier, the statute says in express terms that it "shall be liable" for "any loss, damage, or injury to such property," and that "no contract, receipt, rule or regulation shall exempt such common carrier from the liability hereby imposed."

"Any loss, damage, or injury" means all loss, damage, or injury, and the statute says the holder is entitled to recover this, notwithstanding a stipulation to the contrary in the bill of lading, and we do not see how such language can be construed to put life into a stipulation limiting liability and give it the effect of preventing a full recovery.

We are of opinion there is no error.

No error.