A. H. SLOCUMB v. RALEIGH, CHARLOTTE AND SOUTHERN
RAILROAD COMPANY.

(Filed 8 April, 1914.)

1. **Railroads—Contracts—Leases—Interpretation—Damages by Fire
—Location of Cause—Words and Phrases.**

Contracts will be construed to effectuate the intention of the parties, and in some instances the conditions surrounding the contracting parties may be considered as well as the nature of the instrument; and where the lessee of a railroad company of lands upon which to operate a ·turpentine distillery, and upon which the company is to lay for the benefit of the plaintiff a switch or siding sufficient to accommodate two cars, agrees in the lease, "that any fires originating within the boundaries hereby leased shall not be chargeable to the company," and that the company should not be held responsible therefor, it is *Held,* the defendant is not responsible in damages for the destruction of the distillery caused by a spark from its train negligently operated off the leased premises, and which flew thereon and ignited the plaintiff's property.

2. Railroads — Leases—Negligence—Limitation of Liability—Public Policy—Public Duties.

In making a lease of its lands to private shippers and placing thereon a switch or siding for their use, a railroad company is not performing a public duty such as will invalidate a stipulation in the lease, whereby the lessee agrees not to hold the company liable for fires occurring on the leased premises through its negligent acts.

APPEAL by plaintiff from *Lyon, J.,* at October Term, 1913, of CUMBERLAND.

This is an action to recover damages for the destruction by fire of a turpentine distillery. The jury returned the following verdict:

1. .Was the property of the plaintiff burned by the negligence of the defendant, as alleged in the complaint? Answer: Yes.

2. Was said property burned by the contributory negligence of the plaintiff? Answer: No.

3. What damage, if any, has the plaintiff sustained? Answer: $1,800.

4. Did the plaintiff, Slocumb, execute the contract dated 15 July, 1908, and go in possession of said land in pursuance thereof? Answer: Yes.

The contract referred to in the fourth issue is a lease of a lot of land belonging to the defendant, for the purpose of erecting and maintaining the distillery thereon, in which it is stipulated among other things that the defendant would "lay for the benefit of the plaintiff a switch or siding upon the premises leased sufficient to accommodate two cars for the use and benefit of the plaintiff," and further, "that any fire originating within the boundaries hereby leased by the party of the first part to the party of the second part shall not .be chargeable to the party of the first part, and the party of the first part will in no wise be answerable or responsible therefor."

The property leased is .a parallelogram. It begins 28 feet from the center of the track of the defendant, and runs parallel with the track 160 feet, and at right angles with the track 400 feet.

The fire which destroyed the distillery resulted from a spark from an engine of the defendant on its track, being blown into the inclosure.

His Honor signed judgment upon the verdict in favor of the defendant, holding that the fire originated in the inclosure, and that the defendant was relieved of liability by the contract, and the plaintiff excepted and appealed.

*C. W. Broadfoot and H. L. Cook for plaintiff.*
*Robinson & Lyon for defendant.*

ALLEN, J.   The construction of the language used in the lease, "fire originating within the boundaries hereby leased," is not free from difficulty.

If it means that the primal cause of the destruction by fire must be within the boundaries, the stipulation affords no protection to the defendant, on the facts before us, because there would have been no fire but for the spark which came from beyond the boundaries, and, on the other hand, if the proper interpretation of the language is that it was intended thereby to locate the place of combustion with inflammable matter, and the stipulation is valid, there is no liability on the part of the defendant, as the spark ignited the property of the plaintiff within the boundaries of the lease.

In the construction of contracts words are to be taken in their ordinary and popular sense, and while a spark is fire, it is customary, when combustion ensues, to speak of it as a cause rather than the fire itself.

Fire is defined in the Century Dictionary as "The visible heat or light evolved by the action of a high temperature on certain bodies which are in consequence styled inflammable or combustible—combustion, or the heat and light evolved during the process of combustion," and according to this definition there was a cause outside of the boundaries, which came in contact with inflammable matter within the boundaries and resulted in a fire there.

That this is not an unreasonable construction is shown by the evidence of the plaintiff, who testified, among other things, "44 feet and 3 inches from main track *to where fire started.*"

In *Mitchell v. Insurance Co.*, 183 U. S., ..., the Court had under consideration a clause in an insurance policy exempting the company from liability from explosions unless there was also a fire, and it was held that a match lighted and coming in contact with vapor was not a fire.

In *Insurance Co. v. Foote*, 22 Ohio St., 340, a similar provision was considered. The explosion was caused by a burning gas-jet, and the Court says: "The gas-jet, though burning, was not a destructive force, against the immediate effects of which the policy was intended as a protection, although it was a possible means of putting such destructive force in motion; it was no more the peril insured against than a friction match in the pocket of an incendiary."

These authorities are not conclusive, but they furnish some analogy because in each the policy insured against loss by fire, and exempted from loss by explosions, and it was held there was no liability on the part of the company resulting from explosions which would not have occurred but for the lighted match or gas-jet.

Again, in the construction of contracts, "it is necessary that regard shall be had to the nature of the instrument itself, the condition of the parties executing it, and the objects which they had in view" (9 Cyc., 588), and a construction should be adopted, if possible, which will uphold the contract and make it operative.

What was the condition of the parties and what did they have in view when the lease was executed?

The plaintiff was the owner of a turpentine distillery, which, with its products, was highly inflammable, and he desired to place it near the track of the defendant for convenience in receiving and forwarding freights. Both parties to the contract knew that trains would constantly pass along the track of the defendant within 28 feet of the leased premises, and that sparks would probably escape. The plaintiff could insure the distillery, and the defendant could not, because it had no interest in the property.

In the absence of a clause in the lease relieving of responsibility from loss by fire, there could not have been any liability on the defendant except for fires arising from its negligence, and the only cause for such fires that could have been anticipated was the escape of sparks from the engines.

The stipulation against liability for fires could not have been intended to cover fires arising from the operation of the plant of the plaintiff, nor fires when the defendant was not negligent, because in neither case did the defendant need protection, and it would be practically inoperative and of no effect unless it covered fires caused by sparks escaping from engines and thrown on the premies.

The only circumstance that militates against this view is that the defendant agrees to lay a switch or siding on the premises, the argument being that the lease contemplated that the engines of the defendant would enter upon the premises to place and remove cars, and that only fires originating on the premises from those engines were intended to be provided against.

It is sufficient answer that there is no such restriction in the lease; but aside from this, is the position reasonable, and probably what the parties intended?

The switch or siding was required to be of sufficient length to accommodate two cars, and the plant and products on hand at the time of the fire were worth $1,800.

It is not clear the engines would have to enter the premises to place or remove the cars, or that they did so, as the work could have been done by moving backward as well as forward; but assuming that they would enter, it would only be occasionally, and it does not appear to us to be a fair and just inference that the parties intended to provide against a danger occurring at infrequent intervals, and leave unprovided for conditions of equal danger existing many times each day.

We therefore conclude that the better and sounder position is that the stipulation in the lease was intended by the parties to cover a loss by fire caused as was the one in this case. If so, is the stipulation valid?

It is well settled here and elsewhere that a common carrier while performing its duties to the public cannot contract against its negligence; but the public had no interest in the plant of the plaintiff or in the lease between him and the defendant, and the authorities seem to be uniform that such contracts are not against public policy and are enforcible.  Elliott on Railroads, vol. 3, sec. 1136 (2d Ed.); Thompson on Negligence, vol. 2, sec. 2837; *Woolworth v. R. R.* (Tex.), 86 S. W., 942; *Griswold v. R. R.,* 90 Iowa, 256; *Stevens v. R. R.,* 109 Cal., 86; *Ordelhide v. R. R.,* 80 Mo. App., 357; *Blitch v. R. R.,* 122 Ga., 711; *Hartford Fire Insurance Co. v. R. R.,* 175 U. S., 91; *R. R. v. Saulsbury,* 115 Tenn., 402.

Mr. Elliott says in the section cited: "So far as we have been able to discover, there are few cases in the books governing the validity of a contract exempting a railway from liability for negligently firing and burning property.  We think that ordinarily a contract exempting a company from liability for negligently burning property not on the right of way or premises of the company would be held void.  But where property is placed on a railway right of way by virtue of a contract in which the owner releases the railroad company from any and all liability on account of fire, and the property is afterwards destroyed by fire negligently set by the railway company, the contract is not void, and the company cannot be held liable."  And the editor, in the note to the *Saulsbury case,* which is reported in S. A. and E. Ann. Cases, 744, says that "The courts of the various States seem to have held uniformly, in accordance with the doctrine of the reported case, that provisions in contracts by railroads exempting them from liability for fires communicated by them to buildings or other property, situate on their right of way, do not contravene public policy, and are valid as between the parties thereto."

"The reason given by the courts for so holding is that no question is involved in which public rights are affected.  They take the view that a railroad does not make such contracts in its capacity as a common carrier, and that, therefore, it has the same right as an individual to limit its liability by contract.

*Stephens v. Southern Pac. R. Co.,* 109 Cal., 86; 41 Pac. Rep., 783; *American Cont. Ins. Co. v. Chicago, etc., R. Co.,* 74 Mo. App., 89," citing a long list of authorities.

We are therefore of opinion that the contract is valid and protects the defendant from liability.

No error.