D. L. HERRING v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 18 March, 1925.)

**1. Railroads—Rules—Waiver.**

By permitting its shippers to accumulate bales of cotton upon its platform, in spaces thereon assigned to them, for a long period of time, a railroad company waives a rule it has promulgated that no liability for fires thereon will attach to it unless and until the cotton has been offered to and accepted by it for shipment, and its bill of lading accordingly issued, though notice of this rule has remained posted on the platform in question.

**2. Railroads—Negligence—Proximate Cause—Fires—Burden of Proof.**

Evidence that the plaintiff's cotton was destroyed by fire while on the defendant railroad company's platform at night; that half an hour before the fire a freight train was stopped near the platform, with a caboose car attached, whereon was a fire in the stove for cooking; that live coals were on the track beneath this car on an inflammable right of way, with the wind blowing towards the platform, is sufficient to take the issue of defendant's negligence to the jury, with the burden of proof on plaintiff, permitting plaintiff to recover, if the negligence is found by the jury to be the proximate cause of plaintiff's damage.

**3. Same—Instructions.**

Where there is evidence tending to show only that the plaintiff's cotton on the defendant's platform was set fire to and destroyed by fire set out negligently from the defendant's caboose car, and no evidence that it was caused by fire set out by the locomotive attached to the train, it is not reversible error, as tending to confuse the jury in its deliberations, for the trial judge to read by way of analogy, so far as it would extend, opinions of the Supreme Court on the question of the defendant's liability for setting out sparks from its locomotive, with instructions that properly confined the analogous cases to the law involved in the instant case.

**4. Same—Rights of Way.**

Where the issue is presented as to whether the defendant railroad company negligently set out fire on its foul right of way, which was communicated to and destroyed the plaintiff's property, a definition that defined the right of way as coextensive with the defendant's right to use the land for railroad purposes, and not confining it to its actual present use, is correct.

**5. Instructions—Interpretation — Railroads—Negligence—Fires—Appeal and Error.**

An instruction to the jury will be given effect in its connected and related parts as a whole; and *held,* under the facts of this case, it is not objectionable as making the defendant railroad company liable for negligence and as an insurer for cotton of its customer stored on its platform for accumulation to a sufficient number of bales for sale and shipment, and which, at the time, had not been tendered to the defendant for shipment or accepted by it therefor, etc.

**6. Appeal and Error—Damages—Verdict—Interest.**

Where the issue of the amount of damages has been presented to the jury for determination and the amount practically agreed upon depending upon the question as to the defendant's negligence, it is not thereafter open to the defendant, for the first time after verdict, to contend that interest had erroneously been included by the verdict.

APPEAL from *Daniels, J.,* and a jury, at September Term, 1924, of SAMPSON.

The main contentions of plaintiff is set out in a part of his complaint, as follows:

"That on account of the negligence and carelessness and want of due care on the part of the defendant as set out above in negligently main-

taining a foul and trashy right of way by leaving its passenger engine near said platform with the fire still burning in its furnace and by negligently removing the ashes from said engine and live coals and throwing the same on their said trashy and foul right of way near said cotton platform, and by locating the eating car on the freight train within a few feet of said cotton platform and negligently permitting the stove in said eating car to be lighted and used for cooking purposes and by maintaining a defective flue without a spark arrester, and by permitting sparks to escape from said flue, and by permitting the shifting of their freight engine on their said track near said cotton platform where the plaintiff's cotton was stored, which engine by the defendant's negligence was emitting live sparks of fire and the defendant by inviting the plaintiff and their other customers to store their cotton on their cotton platform on their right of way within a few feet of said engine and by the defendant's failure to exercise due care for the plaintiff's cotton thus situated for shipment, that on account of the negligent conduct on the part of the defendant, fire escaped from the defendant's said engine and live coals and ashes from said fire box as aforesaid, ignited the foul and trashy right of way and was communicated thus to said cotton platform and burnt up fifty-eight bales of cotton belonging to the plaintiff, and the plaintiff was damaged in the sum of $5,909.97."

The contentions of plaintiff were denied *in toto* by defendant.

The issues submitted to the jury by the court below and their answers thereto, are as follows:

"1. Was the plaintiff's cotton burned by the negligence of the defendant, as alleged in the complaint? Answer: 'Yes.'

"2. If so, what damage is the plaintiff entitled to recover? Answer: '$5,909.97, with interest from 13 October, 1922, up to date.'"

Judgment was duly rendered in accordance with the verdict.

The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The other material facts and assignments of error will be considered in the opinion.

*Faircloth & Fisher, Fowler & Crumpler, H. E. Faison and Butler & Herring for plaintiff.*

*Rountree & Carr and A. McL. Graham for defendant.*

CLARKSON, J. On 13 October, 1922, between 9 and 9:30 o'clock at night, the plaintiff, a cotton buyer, had 58 bales of cotton, for which he paid $5,909.97, burned. The cotton was on the defendant's covered shed or platform, on which it received freight for shipment, in the town of Clinton. This cotton was sold on the morning of 13 October, to one J. B. Wilson, who lived at Warsaw, at 22⅝ per pound, and it was to have been shipped to the purchaser the next morning, over defend-

ant's road. The defendant, during the cotton season, permitted the official cotton-weigher for the town of Clinton to have scales located in the middle of the platform for accommodation, where cotton purchased by the various cotton buyers of the town of Clinton was weighed. Certain cotton buyers had sections on the railroad platform to put their cotton. Plaintiff had a section numbered, which would hold about a hundred bales, reserved for his cotton. Plaintiff had been shipping there, using scales and platform about 7 years. The weigher, after weighing the cotton, had the one he had hired to roll the cotton and place it in his section. The platform where the cotton was stored came up near the box cars that hauled the cotton. The cotton on the platform was within 20 feet of the railroad and on defendant's right of way. A few bales had been there since August, most of it from one to three weeks. Plaintiff was allowed to keep the cotton there until he had enough to fill an order, and testified that "Nobody asked me to take that cotton off the platform . . . There was an understanding that I would ship the cotton when I got an order for it or found a purchaser. Some cotton was sitting there in the section that had been assigned to me to accumulate cotton on. I did not want to sell it as the prices were going up. I was not trying to find a purchaser. I accumulated it and paid for it. It was already sold but not delivered. I did not have a bill of lading for it and it was not insured. . . . I saw cotton blowing around. Those wads were put on top of the bale, and the wind must have blown them off, just small bunches of cotton. Pretty dangerous condition it looked to me. . . . The cabin and cars were right there where the cotton burned."

Ross McAlop, testified for plaintiff in part: "The night of the fire I was staying at my mother's, 35 or 40 yards from the fire. I still live there. The premises around the platform from the side of the railroad were in bad condition. There was a cab sitting there. I discovered some ashes between the railroad tracks and it was live coals, smoking a little bit. There was some fire coming out of the railroad cab that was sitting there; and there was some people in their making right smart of fuss, laughing and enjoying themselves. This was on the side by the mule pen, up towards the warehouse. The cab was on a work train. I suppose the hands cooked and ate on the cab. That was somewhere about twenty feet from the platform as near as I can guess. From the edge of the cab to the edge of the platform was about four and a half feet I guess. The platform was covered with cotton. It was somewhere after 9 or close to 10. It was about thirty minutes before the fire broke out. I was up at Henderson Boykin's house about a half mile from the railroad when the fire broke out. I went to the fire. The wind was whipping both ways when I came up and then switched that

way and then the wind changed and carried it both ways. The wind was blowing from across the railroad track and another time blowing another way. There were live coals in the little ashes that I spoke of. It was on the south side of the platform right in the center of the railroad track. About four or five feet from the platform. There was some old scrap cotton that had blown out between the railroad track and the cotton platform, and some scrap hay that had been pulled out of the box. The weather was dry and windy."

Chester Faircloth (colored), testified for plaintiff: "I live in town. I saw the cab the night before the fire. It was not far from the cotton platform, I think it was on the main line; did not notice it particularly. I passed along there and noticed fire coming out of the stove flue where the flue would T. The fire was coming out both ways when I went along there, a blaze of fire coming out of both sides of the flue. Somebody was in there laughing and talking. I did not notice whether that right of way was clean or foul, that day, that night or the day before. There would always be scattered cotton there. The cab was about thirty or forty feet from the cotton platform. The cotton platform that night was full of cotton. I saw this about thirty minutes before the fire alarm."

Plaintiff's evidence tended to show that the cotton was ignited by sparks, or cinders, from the flue of the caboose or train hands' eating car, and from live coals and ashes on the track put there from the engine—all near the cotton. The right of way was foul and trashy with inflammable material, the wind was blowing from the flue and live coals and towards the cotton.

The record shows that some fifty witnesses testified in the court below. We have only given such evidence as we think material to pass on the assignments of error made by defendant.

The defendant had caused a notice to be posted at the platform, as follows: "All persons are hereby forbidden to place cotton or other property upon the right of way or premises of this company unless the same is tendered for shipment with full shipping instructions given to the agent of the company at the time such property is so placed; the company will assume no responsibility or risk of any kind for the property so unlawfully placed upon its premises without its consent, but the same will be at the full risk and care of the owner."

The defendant's first assignment of error to the charge of the court below, is as follows: "Now, if the company gave this notice and posted it, but permitted the buyers and cotton weigher to use it as they had been doing theretofore, then that would be what is known in law as a waiver of the notice to take off or obtain bills of lading, and would not affect the rights of the plaintiff in this case, and if you are satisfied

19—189

that in spite of this notice, the railroad company did permit buyers and the cotton weigher to use this platform in the manner testified by all the witnesses, then you will find that was a waiver of requirement to move or obtain bill of lading, and if you do so find, then you will go to the other phases of the case. . . . I charge you, upon all the testimony, if you find the facts to be as testified by the witnesses, in reference to the use of the platform, and this notice, that there was a waiver by the defendant of the requirement to obtain bill of lading, or remove the cotton, and an. implied consent that the platform should be so used."

The defendant contends that it "had a perfect right to make and promulgate this rule and to insist upon its being complied with." In this we agree, but defendant further contends that there was sufficient evidence that ought to have been submitted to the jury that defendant had not waived the requirements of the rule. In this we cannot agree. From a careful reading of the entire evidence, we think the charge of the court below correct, and this assignment of error cannot be sustained.

It is well settled law that railroad companies, in the conduct of their business, have a perfect right to make and promulgate reasonable rules and regulations. To be binding, they must be properly promulgated and in full force and effect—a living rule—and not revoked or abrogated by other inconsistent rules and regulations or orders. With knowledge or acquiescence of the master, either express or implied that they have been habitually violated, they are ordinarily regarded as a dead rule, waived, abrogated or revoked. *Hinnant v. Power Co.,* 187 N. C., 299; *Tisdale v. Tanning Co.,* 185 N. C., 501; *Fry v. Utilities Co.,* 183 N. C., p. 288; *Whitehurst v. R. R.,* 160 N. C., 2; *Smith v. R. R.,* 147 N. C., 610; *Bordeaux v. R. R.,* 150 N. C., 531; *Haynes v. R. R.,* 143 N. C., 165; *Biles v. R. R.,* 139 N. C., 532, same case 143 N. C., 78. On all the evidence, we think the rule was waived by the defendant. It was so far as this plaintiff's rights were concerned, a dead rule.

The defendant's second assignment of error is in regard to the charge of the court below, as follows: "I have instructed you not to consider any allegation of negligence by reason of sparks from the engine, but the rule laid down by our courts, even if there had been any sparks from the engine, is as follows: I am reading this as a direction to you, although I have told you that you cannot consider any sparks from the engine, but you will apply this law to the evidence, if you find there was any fire that escaped from the caboose." Then the court below laid down the rule of liability in regard to "sparks or cinders from an engine" and read the rule as laid down by *Walker, J.,* in *Aman v. Lumber Co.,* 160 N. C., 373. Further in the charge, the court below said: "There-

fore, I charge you that you cannot hold this defendant in any manner for any sparks coming from the locomotive, and igniting any trash or anything of that sort  . . .''

Defendant contends that there was no evidence of any sparks from the engine and the court so held, but the defendant further contends that the court below applied the rule of "sparks and cinders from an engine" to sparks from the flues of the caboose stove. We think this in the charge later on was eliminated as the court does not in the direct charge require defendant to have spark arresters in connection with cook-stoves in cabooses. It is not necessary for us to decide in this case. We must take the charge as a whole and not disconnectedly. Taking the entire charge complained of, we do not think it was confusing, as contended by defendant, nor do we think this aspect material or prejudicial. The reading of the authority was mainly for the purpose of explanation and laying down the general principles of law as decided by this Court in partial analogous cases. The jury is presumed to be men of sufficient intelligence, judgment and sense to draw the distinction and could not have been misled. The court below clearly and correctly charged the jury so there could be no misunderstanding, as follows:

"If you should find by the greater weight of the testimony, the burden being upon the plaintiff, that the defendant permitted the cotton to be and remain on its platform near its railroad track, that samples of cotton were stuck on the bales and that there was cotton waste upon the said platform and around the said platform as to be easily ignited, and these samples caught from sparks or fire from the flue of the caboose car and fire was thereby communicated to the plaintiff's cotton and destroyed the same, you will answer the first issue 'Yes,' with the qualification that that inflammable matter must have been there long enough for the railroad company to have known of its presence and to have had an opportunity to remove it.

"If you find by the greater weight of the evidence, the burden being upon the plaintiff, that the defendant permitted cotton to be and remain on its platform, near its railroad track, and permitted samples of cotton and waste cotton and other inflammable matter to be and accumulate upon, under and around its platform, or its right of way, and that such waste cotton and other inflammable matter caught fire from sparks from the flue of the caboose car, or from fire from ashes and live coals left upon the track by the defendant's servants or agents, and the cotton was destroyed as the direct consequence of the same, you will answer the issues 'Yes,' unless you are satisfied of one of these propositions by the greater weight of the evidence, you will answer the issue 'No.' If you are not satisfied by the greater weight of the evidence that sparks were emitted from the caboose flue upon the cotton waste or foul matter

upon the right of way, and burned over it and destroyed the plaintiff's cotton, then you will disregard that contention from your consideration.

"And if you are not satisfied by the greater weight of the evidence that the fire that burned the cotton came from such coals and ashes, if you find there were any upon the right of way, then you would disregard that allegation of negligence. If you are satisfied by the greater weight of the evidence that sparks did come from the ashes or coals on the tracks but are not satisfied by the greater weight of the evidence that that set fire to and burned the cotton, then you would answer the issue 'No.' There must not only be negligence on the part of the defendant, as I have defined it, but this negligence must be the proximate cause of the plaintiff's injury. You will have to find that there was negligence in regards to the coals or negligence in regards to sparks from the caboose—then, in addition to that, you will have to find that the right of way was foul, and fire from one of these sources or the other was communicated to a foul right of way and destroyed the plaintiff's property, before you can answer the issue 'Yes.' Unless you are satisfied of this, as I have recited, by the greater weight of the evidence, you will answer the issue 'No.'

"You will remember that negligence or wrong-doing is never presumed against any man, and when property is destroyed by negligence, that places upon the complainant the burden to prove negligence and liability. The mere fact of a fire furnishes no inference of negligence, but in addition to the fire, there must be shown by the greater weight of the evidence, on the part of the plaintiff, that the defendant was negligent and that negligence was the proximate cause of the injury, before you can answer the first issue 'Yes.'"

Defendant's third assignment of error is in regard to the charge as to what constitutes a railroad's right of way: "The term 'right of way,' as applied to a railroad company, means a way over which the company has a right to pass in the operation of its trains, and the ordinary signification of the term when used to describe land which a railroad company owns or is entitled to use for railroad purposes, is the entire strip or tract it owns or is entitled to use for its purpose, and not any specific or limited part thereof upon which its main track or other specified improvements are located. It includes not only the strip of ground upon which the main line is constructed, but, as well, all ground necessary for the construction of sidetracks, turnouts, connecting tracks, station houses, freight houses, and all other accommodations necessary to accomplish the object of its incorporation."

It will be noted that this definition is the exact language and taken from 22 R. C. L., p. 848, part of par. 100. The court then goes on and quotes the general rule approved by *Allen, J.,* in regard to "sparks and

cinders from engine," in *Denny v. R. R.*, 179 N. C., p. 534: "The defendant is not required to keep its right of way absolutely clear and clean of all matters whatsoever that may be ignited, nor is it liable because of an accumulation of combustible matter on the right of way, likely to be the cause of injury, if there through some other agency than its own, and for so short a time that the defendant had no notice of its presence, express or imputed from length of time, and no opportunity to remove it. It must, however, exercise due care and precaution to avoid injury to the property of others, and to that end must not permit grass and other combustible matter to accumulate or remain on its right of way in such quantity and of such character 'as are liable to be ignited· by sparks and cinders from its engine,' cause injury, and so dangerous that it may reasonably be anticipated that injury will occur to adjacent landowners from fires originated thereon from engines being operated on it."

The court then goes on and defines negligence, and says further: "In order that there may be no misunderstanding in your minds about the duty of the defendant, that having the cotton upon its platform, baled in the usual way, of itself, would not constitute a violation of its duty, to have its track free from foul matter, such cotton being there intended for shipment in the ordinary course of business, and in such large quantity that, it is contended, its warehouse could not accommodate it, the quantity varying from time to time, and permitting it to be there, baled and awaiting shipment, would not be a violation of its duty in that respect. Nor could it be held on account of the mere fact of the presence of the cotton there to violate its duty to maintain a clean right of way or clean premises. It would be liable only if the premises and right of way were permitted to become foul in the sense which I have defined, with samples of cotton permitted to lay there and cotton around the platform and premises likely to be ignited, and in order to constitute negligence, this inflammable matter must have existed there long enough for the railroad company to know, or so long that it could have known it in the exercise of reasonable and proper care, that it was there and constituted such a menace to property likely to be ignited and burn property there." This assignment of error cannot be sustained.

The fourth assignment of error cannot be sustained. This part of the charge must be construed with that already given—and the part which followed.

Defendant contends that the charge of the court makes defendant an insurer. We cannot so hold, but, on the contrary, the court in defining negligence bases defendant's liability squarely on negligence and that such negligence must be the proximate cause of the injury.

The court clearly charged: "Under the evidence in this case, I charge you that the defendant cannot be held in any manner as a common carrier or insurer of the property of the plaintiff, the cotton never having been delivered to the defendant or accepted by it for shipment, and therefore you will disregard any question of the defendant being insurer or being responsible for the cotton, because it was on this platform. I charge you further that there is no evidence to show that the locomotives of the defendant were defective or negligently operated, nor that the fire that burned the cotton escaped from either of them, and you are not authorized to find the defendant negligent by reason thereof, and are instructed not to do so."

The defendant relies on *Shields v. R. R.*, 129 N. C., p. 5. In that case the Court says: "The defendant company was liable if grass and other inflammable material, negligently left upon its right of way, was ignited by sparks from its engine, for any damage to adjacent land-owners caused by the spreading of the fire. 8 A. & E. Enc., 14; *Black v. Railroad*, 115 N. C., 667. . . ." The Court goes on and says further: "If the plaintiff had placed combustible matter on defendant's right of way and the fire had originated in that, and destroyed the plaintiff's house and peanuts, it would seem that, in that case, he could not recover; and defendant cited authorities tending to show that he could not. But this question is not presented by the facts agreed and we do not pass upon it."

The defendant contends if the right of way was foul and trashy, and the plaintiff used the platform in his business and produced an inflammable condition, then the plaintiff should not be allowed to recover. We do not think this question presented from the facts. The entire charge on this aspect placed the responsibility on defendant only in regard to the loose scattered cotton and trash, the foul and inflammable condition that defendant negligently permitted on the right of way. There was no evidence that plaintiff put any inflammable matter on defendant's right of way.

The case of *Maguire v. R. R.*, 154 N. C., 384, cited by defendant is no authority in the present case. In the *Maguire case* it was held in general "When the evidence raises no more than a mere conjecture as to defendant's negligence, it is error to submit the case to the jury." *Brown, J.*, in that case distinctly says: "In *Black's case, supra* (115 N. C., 670), the following language was used in charging the jury: 'You must first ascertain whether or not the fire was occasioned by fire or sparks from the engine. The burden of proof is on the plaintiff to show this. If the plaintiff has not shown it, that ends the case, and you should answer the first issue "No." If you find the fire was occasioned by fire or sparks from the engine, then you must go on further and

inquire whether or not the defendant company has been negligent and whether or not the damage to the plaintiff has been approximately caused by such negligence. If so, you should answer the first issue "Yes." ' On appeal, this instruction was approved."

The *Black case* was tried in the court by *Brown, J.,* then on the Superior Court bench, and his charge was approved by *Burwell, J.*

There was sufficient evidence in the present case to be submitted to the jury.

We do not think the fifth assignment of error prejudicial or reversible error, in regard to the court's charge in allowing interest. It was in evidence, uncontradicted, that plaintiff had paid 21.60 a pound for the cotton and had sold it for 22⅝. The plaintiff in his complaint demanded judgment only for the cost price of the cotton $5,909.97 damages, with interest. Defendant in its answer admits that the plaintiff "made a claim for the loss of said cotton" and that defendant refused to pay same. The cause seems to have been fought out on the idea that if plaintiff was entitled to recover at all it was for the sum demanded and interest. Defendant asked for no prayer for instruction. Under the facts and circumstances of this case, the assignment of error cannot be sustained.

The case was tried out by an able and painstaking judge. The jury has found for the plaintiff, and, in law, we can find

No error.