J. E. SINGLETON v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 2 November, 1932.)

1. **Carriers B h: Contracts A c—Rule that railroad cannot limit liability for negligence applies to duties as common carrier.**

    The rule that a common carrier may not contract against liability for its negligence applies to transactions in the performance of its duties to the public as a common carrier and not to transactions involving no public duty or obligation.

2. **Same—Goods on railroad platform were not for shipment by rail and railroad could contract against negligent injury thereto.**

    Where a railroad company issues a revocable, nontransferable license permitting the licensee to assemble and handle baled cotton on the company's platform upon condition that the railroad would not be liable for the negligent destruction of the cotton, and this agreement is set out in a written contract which, by its terms, is applicable only to such cotton which had not been tendered or accepted by the carrier for shipment and for which no bill of lading had been issued, and the contract does not obligate the licensee to ultimately ship by rail, and it appears that a large part of the cotton was shipped by truck: *Held,* in executing the contract the licensee was not undertaking to deal with the railroad company as a common carrier, but he executed the contract for his own convenience in using a part of the platform, and the contract bars an action by the licensee to recover for the negligent destruction of the cotton.

3. **Contracts D d—In order for conduct to constitute abandonment it must be positive unequivocal and inconsistent with contract.**

    A valid written contract may be abandoned by agreement, conduct, or by the substitution of a new and inconsistent contract, but in order for conduct to constitute an abandonment of a contract such conduct must be positive, unequivocal, and inconsistent with the terms of the instrument.

**4. Evidence J a—Parol evidence of intent of party is not admissible when contrary to the terms of the written instrument.**

Evidence of the intent of one of the parties to a written contract is not admissible against the other when it is contrary to the intent expressed in the contract itself under a proper interpretation of the instrument.

CIVIL ACTION, before *Barnhill, J.,* at March Term, 1932, of ROBESON.

The evidence tended to show that the defendant is the owner of a platform in the town of Red Springs, North Carolina, and that the plaintiff is a cotton raiser and cotton buyer. Various people placed cotton on said platform. "This platform was the general weighing place for Robeson people bringing their cotton in and weighing it." The agent for the defendant said: "Other people put cotton on this platform besides buyers. He did purchase a great deal of cotton. Cotton was shipped from that platform. I do not recall Mr. Singleton having shipped any . . . that was the place they put the cotton for shipment, and the railroad took it from that platform. The railroad did not have the scales there nor owned the scales. The public weigher had the scales. The railroad permitted him to have his scales on the platform. . . . A large quantity of cotton was moved from the platform at that time by a truck. Cotton would be placed on the platform, weighed, sold elsewhere and moved by truck. A large part of the cotton at that time was placed on the platform and weighed by the cotton weigher and moved by truck and not by train."

On 17 October, 1924, the plaintiff and the defendant entered into a contract as follows: "In consideration of this revocable and nontransferable license granted the undersigned to assemble and handle baled cotton on the premises of Atlantic Coast Line Railroad Company, at Red Springs, N. C., in the State of North Carolina from date of the execution of this instrument until its cancellation, said cotton not having been tendered or accepted for shipment and bill of lading not having been issued therefor but ultimately for movement via said railroad, the undersigned licensee recognizing the great danger and hazard to said cotton due to its being so situated, hereby agrees to indemnify and save harmless the Atlantic Coast Line Railroad Company from any and all liability for loss or damage to said cotton while so placed on said railroad company's premises, due to any cause or causes whatsoever, whether occasioned by the negligence of said railroad company, its agent or employees, or otherwise, and against any and all claims, demands, suits, judgment and costs based thereon."

On Saturday afternoon, 13 February, 1926, the plaintiff had sixty bales of cotton upon said platform and an engine of the defendant negligently put out fire, igniting the cotton and destroying it, together with

certain hay. The value of the cotton destroyed by fire was $3,422.86, and the damage to the hay was $320.50. The plaintiff instituted an action to recover the value of the cotton and the hay, and the defendant relied upon the contract as a bar to recovery of the value of the cotton.

The following issues were submitted to the jury:

1. "Was the plaintiff's property damaged by the negligence of defendant as alleged?"

2. "If so, what damage, if any, was done to plaintiff's cotton?"

3. "If so, what damage, if any, was done to plaintiff's hay?"

4. "Was the paper-writing referred to as the release set out in defendant's further answer, executed by the plaintiff as alleged by the defendant?"

5. "If so, has said contract been canceled or abandoned as alleged by the plaintiff?"

The jury answered the first issue "Yes," the second issue "$3,422.86, with interest to date," the third issue "$320.50, with interest to date," the fourth issue "Yes," the fifth issue "No."

Judgment was entered in favor of plaintiff for the sum of $320.50, from which judgment the plaintiff appealed.

*Varser, Lawrence, McIntyre & Henry for plaintiff.*
*Dickson McLean and H. E. Stacy for defendant.*

BROGDEN, J. The primary question of law may be stated as follows: Was the contract or lease valid and enforcible as a bar to recovery for the value of cotton negligently destroyed by fire?

The plaintiff insists that the contract or lease entered into by the parties in October, 1924, was contrary to public policy and void, for the reason that said contract permitted the defendant to relieve itself from the consequence of its own negligence. It is well settled here and elsewhere that a common carrier, while performing its duties to the public, cannot contract against its negligence. *Mule Co. v. R. R.,* 160 N. C., 215, 76 S. E., 513; *Cooper v. R. R.,* 161 N. C., 400, 77 S. E., 339. The defendant insists that the rule of law forbidding common carriers to relieve themselves of liability for negligence applies only to transactions in which the carrier is discharging his duty to the public and not to transactions involving no public duty or obligation. This distinction is pointed out and applied in *Slocumb v. R. R.,* 165 N. C., 338, 81 S. E., 335. In that case the railroad company leased a part of its right of way for the erection and maintenance of a distillery. The distillery was destroyed by fire, resulting from the negligence of defendant. The Court said: "It is well settled here and elsewhere that a common carrier while performing its duties to the public cannot contract against its negli-

gence; but the public had no interest in the plant of the plaintiff or in the lease between him and the defendant, and the authorities seem to be uniform that such contracts are not against public policy and are enforcible." Hence recovery was denied. The *Slocumb case* has been cited and applied by the Circuit Court of Appeals in *Southern Railway Co. v. Stearns Bros.*, 28 Fed. (2d), 560. *Parker, Circuit Judge,* wrote: "It is well settled that a railroad company cannot contract against liability for its negligence with respect to the performance of its duty as a common carrier. This rule has no application, however, to contracts by which it leases portions of its right of way for uses not connected with the discharge of its duty as such carrier. The public has no interest in such contracts, and a provision that the railroad is not to be held liable for negligence resulting in damage to property placed upon the leased premises is not void as being contrary to public policy. This is the holding not only of the Federal Courts, but also of the courts of North Carolina, by whose public policy the validity of the contract is to be governed." See, also, *Godfrey v. Power Co.,* 190 N. C., 24, 128 S. E., 485. A case directly in point is *German-American Ins. Co. v. Southern Ry. Co.,* 58 S. E., 337. In that case cotton upon a platform of the railroad company was destroyed by fire. The Supreme Court of South Carolina said: "The authorities generally hold that a contract by a railroad corporation is not against public policy because it exempts from liability for fires, even negligently communicated by its agents or defective instrumentalities to property placed by the owner upon railroad premises, not as a patron dealing with the company as a common carrier, but by virtue of the special agreement."

In the case at bar the plaintiff did not place his cotton upon the platform as a patron of the defendant, for the reason that the contract or lease expressly states that "said cotton not having been tendered or accepted for shipment, and bill of lading not having been issued therefor but ultimately for movement via said railroad," etc. It is to be observed that the contract did not obligate the plaintiff to "ultimately" ship the cotton by railroad, and there is abundant evidence in the case that substantial portions of cotton placed upon the platform were moved by truck and not tendered to the defendant for shipment. Consequently, the Court is of the opinion that the facts disclose that the plaintiff in making the contract, was not undertaking to deal with the railroad in its capacity as common carrier, but rather for his own convenience upon the basis of using a portion of the right of way for the purpose of assembling cotton. Hence the special agreement or lease agreement constituted a bar to the right of recovery for negligent destruction of the cotton.

Two secondary questions of law are urged by the plaintiff. First, that the contract was abandoned, and second, that the trial judge excluded certain evidence offered by the plaintiff tending to show that the lease or special agreement was intended by the parties to apply only to a certain lot of cotton which the plaintiff had on the platform at the time the contract was executed.

When a valid contract has been duly executed it is presumed to remain in force and effect until it is abandoned or relinquished. This Court has declared that "a written contract may be abandoned or relinquished: (1) by agreement between the parties; (2) by conduct clearly indicating such purpose; (3) by substitution of a new contract inconsistent with the existing contract." *Bixler v. Britton,* 192 N. C., 199, 134 S. E., 488. It is not contended that the first or third method of contractual abandonment was effective in this case. Hence the second method or abandonment by conduct is the only method available to the plaintiff. Upon that aspect of the law, the Court has spoken in these words: "But it is clear that the acts and conduct constituting such abandonment must be positive, unequivocal and inconsistent with the contract." *Robinet v. Hamby,* 132 N. C., 353, 43 S. E., 907. See, also, *Harper v. Battle,* 180 N. C., 375, 104 S. E., 658. Nor did the trial judge err in excluding the testimony as to the understanding and intent of the plaintiff at the time the written contract was executed. The controlling principle of law was tersely stated in *Walker v. Venters,* 148 N. C., 388, 62 S. E., 510, as follows: "A contemporaneous agreement shall not contradict that which is written. The written word abides and is not to be set aside upon the slippery memory of man."

The plaintiff relies upon *Herring v. R. R.,* 189 N. C., 285, 127 S. E., 8. However, an examination of the facts in that case indicates that the plaintiff was dealing with the railroad company as a patron or in its capacity as a common carrier.

No error.