MILLER'S MUTUAL FIRE INSURANCE ASSOCIATION OF ALTON, ILLINOIS, v. ROBERT W. PARKER, T/A PARKER'S ESSO SERVICE No. 2.

(Filed 7 June, 1951.)

**1. Contracts § 7e—**

Under the fundamental freedom to contract, a party may stipulate against liability for his own negligence provided such provision is not violative of law or contrary to some rule of public policy.

**2. Bailment § 4—**

Ordinarily a bailee is not liable for loss or damage to the property bailed unless he is at fault, and therefore a provision of the contract that the bailee should not be liable for theft or destruction of the property by fire is a provision relieving the bailee from liability for his own negligence.

**3. Same—**

The duty of a bailee to exercise due care to protect the property bailed against loss, damage or destruction, is a duty imposed by law from the

relationship of the parties and not a duty implied under the bailment contract, and a breach of this duty gives rise to an action in tort for negligence rather than one on the contract.

**4. Same: Contracts § 7e—**

While the bailee may contract against liability for his own negligence where there is no great disparity of bargaining power and where the contract of bailment concerns only the private affairs of the parties, the operation of a public parking lot at which the public is dealt with on a uniform basis and prospective bailors must accept conditions imposed or go without the service, is a matter in which the public has an interest, and a contractual provision that such bailor should not be liable for a loss of vehicles by fire or theft is contrary to public policy and is unenforceable. Contracts in which the owner of the car is a mere licensee or lessee, distinguished.

APPEAL by plaintiff from *Bennett, Special Judge,* January Special Term, 1951, MECKLENBURG.  New trial.

Civil action to recover the value of a stolen automobile.

Defendant operates an automobile parking lot in Charlotte in connection with one of his filling stations.  A Mrs. Jenkins contracted for the parking of her automobile on said lot on a monthly basis under an agreement that the defendant should not be liable for the loss of said vehicle by fire or theft.

The automobile was stolen while parked on defendant's lot.  Plaintiff, insurance carrier, paid Mrs. Jenkins the loss sustained, took an assignment, and now sues under the doctrine of subrogation.  In its complaint it alleges want of due care on the part of the defendant in protecting the automobile against theft and particularizes the acts of alleged negligence on his part.  The defendant, answering, denies negligence or want of due care on his part and pleads the contract with the owner in bar of plaintiff's right to recover.

Issues were submitted to and answered by the jury as follows:

"1. Did Mrs. Jenkins agree that the defendant was not to be liable for the loss of her car by fire or theft?

"Answer: YES.

"2. Was Mrs. Jenkins' automobile lost as the proximate result of the negligence of the defendant?

"Answer:

"3. What damages, if any, is the plaintiff entitled to recover of the defendant?

"Answer: . . ."

On the verdict rendered the court entered judgment against the plaintiff and it excepted and appealed.

*Taliaferro, Clarkson & Grier for plaintiff appellant.*
*J. M. Scarborough for defendant appellee.*

BARNHILL, J.   A provision in a contract seeking to relieve a party to the contract from liability for his own negligence may or may not be enforceable.   It depends upon the nature and the subject matter of the contract, the relation of the parties, the presence or absence of equality of bargaining power and the attendant circumstances.

Under our system of government, freedom of contract is a fundamental, basic right of every citizen.   Even so, the public interest is paramount. If the provision is violative of law or contrary to some rule of public policy, it is void and unenforceable.

Under this limitation the courts are in complete accord in holding that a public service corporation or a public utility cannot contract against its negligence in the regular course of its business or in performing one of its duties of public service.   The limitation is likewise uniformly applied to certain relationships such as that of master and servant.

Here complete accord ceases to exist.   Some courts go so far as to hold, without qualification, that under no circumstances may a person validly contract against liability for his own negligence.   Anno. 175 A.L.R. 14. However, the decided weight of authority limits the rule against such contracts to the principle that a party cannot protect himself by contract against liability for negligence in the performance of a duty of public service, or where a public duty is owed, or public interest is involved, or where public interest requires the performance of a private duty.   Anno. 175 A.L.R. 14.

On this question the decisions of this Court are in accord with the majority view.   We hold that even a public service corporation is protected by such an exculpatory clause when the contract is casual and private, in no way connected with its public service and concerning private property in which the public has no interest.   *Singleton v. R. R.,* 203 N.C. 462, 166 S.E. 305; *Slocumb v. R. R.,* 165 N.C. 338, 81 S.E. 335.

But here we are interested primarily in a contract of bailment containing a clause or provision protecting or attempting to protect the bailee against liability for his own negligence.

We may note in the beginning that the contention of the plaintiff that the contract relied on by the defendant does not specifically exempt the defendant from liability for his own negligence and the language used is of such doubtful import that it should not be so construed is untenable. Ordinarily the bailee is not liable for loss of or damage to the property bailed if he is without fault.   *Whitlock v. Lumber Co.,* 145 N.C. 120; *Beck v. Wilkins,* 179 N.C. 231, 102 S.E. 313; *Hanes v. Shapiro,* 168 N.C. 24, 84 S.E. 33; *Falls v. Goforth,* 216 N.C. 501, 5 S.E. 2d 554.   Speaking

to the subject in the *Falls case, Stacy, C. J.,* says: "Ordinarily, the liability of a bailee for the safe return of the thing bailed is made to depend on the presence or absence of negligence." If, therefore, the contract at issue was not intended to protect the defendant against his own negligence, it is devoid of any real substance. So then, we are dealing with a contract which presents squarely the question debated on this appeal.

At first blush it would seem that the duty of a bailee to exercise due care to protect the thing bailed against loss, damage, or destruction is an obligation imposed by the contract, and that a breach thereof gives rise to an action on the contract rather than in tort for negligence. *Council v. Dickerson's, Inc.,* 233 N.C. 472. But the courts uniformly hold that it is a legal duty arising out of the relationship created by the contract. If a person accepts and receives the property of another for safe keeping or other purpose under a contract of bailment, the law requires of him due care by reason of the semitrust relation he thus assumes. *Hanes v. Shapiro, supra; Trustees v. Banking Co.,* 182 N.C. 298, 109 S.E. 6. The obligation to use due care in contracts of this type arises from the relation created by the contract and is independent, rather than a part of it. 6 A.J. (Rev.) 343. That the obligation arises from the relation and not as an implied term of the contract is shown by the refusal of the law under certain circumstances to give effect to provisions in the contract undertaking to nullify the effect of the obligation. *Kenney v. Wong Len,* 128 A. 343.

It is a well-recognized rule of law that in an ordinary mutual benefit bailment, where there is no great disparity of bargaining power, the bailee may relieve himself from the liability imposed on him by the common law so long as the provisions of such contract do not run counter to the public interest. *Hanes v. Shapiro, supra; Cooke v. Veneer Co.,* 169 N.C. 493, 86 S.E. 289; *Sams v. Cochran,* 188 N.C. 731, 125 S.E. 626; *Singleton v. R. R., supra;* Anno. 175 A.L.R. 117. This rule is applied with practical unanimity where the public neither has nor could have any interest whatsoever in the subject matter of the contract, considered either as a whole or as to the incidental covenant in question, and the agreement between the parties concerns their private affairs only. In respect to such contracts the public policy of freedom of contract is controlling.

Respecting other types of bailment, there are various shades of opinion. Many courts hold that where the bailee makes it his business to act as bailee for hire, on a uniform and not an individual basis, it is against the public interest to permit him to exculpate himself from his own negligence. And the decided trend of modern decisions is against the validity of such exculpatory clauses or provisions in behalf of proprietors of parking lots, garages, parcel check rooms, and warehouses, who undertake to protect themselves against their own negligence by posting signs or

printing limitations on the receipts or identification tokens delivered to the bailor-owner at the time of the bailment. In such cases, the difference is the difference between ordinary bailees, on the one hand, and what may be called professional bailees, on the other. They hold themselves out to the public as being possessed of convenient means and special facilities to furnish the service offered for a price. They deal with the public on a uniform basis and at the same time impose or seek to impose predetermined conditions which rob the customer of any equality of bargaining power.

While there is authority *contra,* we are persuaded this rule is founded on reason and common sense and should prevail in respect to contracts such as the one relied on by the defendant.

The complexity of today's commercial relations and the constantly increasing number of automobiles render the question of parking a matter of public concern which is taxing the ingenuity of our municipal officials. People who work in the business sections of our cities and towns and who rely on automobiles for transportation find it difficult—sometimes impossible—to locate a place on the public streets where daily parking is permitted. They are driven to seek accommodation in some parking lot maintained for the service of the public. There they are met by predetermined conditions which create a marked disparity of bargaining power and place them in the position where they must either accede to the conditions or else forego the desired service.

Such was the case here. The defendant was engaged in the business of accepting automobiles for parking for hire, both on a daily and a monthly basis. He required the owner-bailor to surrender the keys to his automobile so that he or his employee could park it at any place of his choosing and move it from time to time during the day as occasion might require. He had "a pretty good-sized sign," "very prominently displayed" saying "Not responsible for loss by fire or theft." He told Mrs. Jenkins "we would not be responsible for loss by fire or theft." "I told her if there was any loss from fire or theft, it would be her responsibility. She left the car. She did not make any statement." This same provision was printed on the identification tokens furnished those who parked by the day only. Under these circumstances it is against the public interest to give force and effect to the exculpatory agreement which would relieve defendant from all liability for his own negligence.

We do not mean to say that this rule applies to all parking arrangements. Under the contract of the parties, the owner may be a mere licensee or a lessee. See *Freeman v. Service Co.,* 226 N.C. 736, 40 S.E. 2d 365; 7 Blashfield, sec. 4668.

We have not cited any considerable number of authorities for the reason those interested may find a comprehensive annotation of the whole

subject in 175 A.L.R. at page 1 *et seq.* where some authority to sustain almost any shade of opinion may be found. See also Restatement of the Law of Contracts, Vol. II, sections 574 and 575; 7 Blashfield, sec. 4668; 7A Blashfield, sec. 5022 *et seq.;* 6 A.J. (Rev.) 176 *et seq.*

The verdict rendered is not sufficient to sustain the judgment entered. For that reason there must be a

New trial.