In re WILMINGTON NURSERY COMPANY, INC., Debtor.

WILMINGTON NURSERY COMPANY, INC., Plaintiff,

v.

Henry BURKERT and Heather Burkert, Defendants.

Bankruptcy No. S–83–00782–7.
Adv. No. S–83–0395–AP.

United States Bankruptcy Court, E.D. North Carolina.

Feb. 2, 1984.

J. Thomas Coxe, Jr., Wilmington, N.C., for defendants.

Frank B. Gibson, Jr., Fred A. Rogers, III, Wilmington, N.C., for plaintiff/debtor.

## MEMORANDUM OPINION

A. THOMAS SMALL, Bankruptcy Judge.

In this adversary proceeding the Plaintiff-Debtor seeks to avoid a judgment lien and to recover payments of $1,600.00 as preferential transfers under 11 U.S.C. § 547(b). The trial was held in Raleigh, North Carolina on December 20, 1983. The parties submitted post-trial briefs.

## FACTS

The Plaintiff, a North Carolina corporation engaged in the nursery and landscaping business, is a debtor-in-possession under chapter 11 of the Bankruptcy Code.

The Defendants, Henry and Heather Burkert, joined with Robert J. Caswell to start the Debtor's business in 1979. Mr. and Mrs. Burkert were actively involved in the business until May, 1982 when the Burkerts and Mr. Caswell had a disagreement. Mr. and Mrs. Burkert were shareholders of the Debtor at the time the Debtor filed for relief, each owning approximately fifteen (15%) per cent of the Debtor's outstanding stock. Mrs. Burkert was an officer of the Debtor until she ceased to be connected with the business in May of 1982. At all times from 1979 through the filing of the petition, Mr. and Mrs. Burkert together owned at least thirty (30%) per cent of the Debtor's voting stock.

In August of 1982, the Burkerts brought suit against the Debtor in the Superior Court of New Hanover County, North Carolina to collect two promissory notes. On January 31, 1983 the Burkerts and the Debtor entered into a consent judgment which obligated the Debtor to pay $34,081.00 in installments of $800.00 per month. Two of the monthly payments were paid by the Debtor to the Burkerts; $800.00 was paid in February, 1983 and $800.00 was paid in March, 1983.

The consent judgment was approved by the presiding Superior Court Judge on January 31, 1983, was filed with the Clerk of Superior Court for New Hanover County, North Carolina on February 4, 1983 and was docketed in Judgment Book 48, Page 210, New Hanover County Clerk of Superior Court's office on February 7, 1983. The Debtor's bankruptcy petition was filed on May 2, 1983.

On February 7, 1983 the Debtor owned approximately ten (10) acres of land in New Hanover County, North Carolina as well as business inventory and equipment.

The Debtor offered evidence to show that the Debtor was insolvent at the time of the transfers. Mr. Caswell, the Debtor's president, contradicted himself several times when testifying about the Debtor's solvency. According to Mr. Caswell, at the time of the transfers the Debtor either: 1) had assets valued at $101,000.00, (including real property worth $84,000.00) and liabilities of $143,000.00; or 2) assets valued at $144,000.00, (including real property worth $112,000.00) and liabilities of $143,000.00. The Debtor's schedule B–1 lists the real property as being worth $84,000.00, but the Debtor's schedule A–2 lists the value of the real property at $112,000.00. The Debtor's land and equipment was purchased in 1979 for $97,000.00 and the Debtor added a greenhouse of unknown value. The Debtor's business showed a profit during only one quarter, but never made an annual profit. The Debtor's business operations have ceased and the assets are to be liquidated. The Court finds that the Debtor's financial condition during the ninety (90) days imme-

diately preceding May 2, 1983 was such that the Debtor's debts were greater than the fair value of its assets and that the Debtor was insolvent during that period as defined in 11 U.S.C. § 101(26).

At the time of the transfers in question, the Burkerts were no longer involved in the operation of the Debtor's business and did not have reasonable cause to believe that the Debtor was insolvent.

The judgment lien constitutes a transfer to or for the benefit of a creditor, for or on account of an antecedent debt (in the amount of $34,081.00), owed by the Debtor before the transfer was made. Furthermore, the transfer enables the Burkerts to receive more than they would receive if the transfer had not been made, and the debt were to be paid according to the provisions of the Bankruptcy Code if this case were a case under chapter 7.

If the judgment lien is avoided as a preferential transfer, the two $800.00 payments constitute transfers to or for the benefit of a creditor, for or on account of an antecedent debt (in the amount of $34,081.00), owed by the Debtor before the transfers were made. Furthermore, the transfers enables the Burkerts to receive more than they would receive if the transfers had not been made and the debt were to be paid according to the provisions of the Bankruptcy Code if this case were a case under chapter 7.

## DISCUSSION AND CONCLUSIONS

At the close of the Plaintiff-Debtor's evidence the Burkerts moved for a dismissal under Rule 41(b) of the Federal Rules of Civil Procedure (Bankruptcy Rule 7041) on the ground that the Debtor's evidence did not support a finding that the Debtor was insolvent on the date of the transfers (11 U.S.C. § 547(b)(3)). The Defendants argue that the conflicting schedules of the Debtor and Mr. Caswell's conflicting testimony should be construed against the Debtor and that the conflicting evidence rebuts the presumption of insolvency of 11 U.S.C. § 547(f). There is sufficient evidence, including the inference to be drawn from the

presumption of 11 U.S.C. § 547(f), for the Court to find that the Debtor was insolvent ninety (90) days prior to bankruptcy and the Defendants' motion was denied. The Court did, however, find at the close of the Debtor's evidence that the Defendants did not have reasonable cause to believe the Debtor was insolvent and the Defendants' motion to dismiss was granted as to transfers made more than ninety (90) days preceding May 2, 1983, the date of the Debtor's petition. The Defendants are "affiliates" of the Debtor (11 U.S.C. § 101(2)(A)) by virtue of their ownership together of thirty (30%) per cent of the Debtor's voting stock. As affiliates, the Defendants are "insiders" of the Debtor (11 U.S.C. § 101(25)(E)). Nevertheless, because the Defendants did not have reasonable cause to believe that the Debtor was insolvent, transfers made outside of the ninety (90) day period immediately preceding bankruptcy would not be preferential as to them (11 U.S.C. § 547(b)(4)(B)).

■ Were the transfers made outside of the ninety (90) day preference period? Bankruptcy Rule 9006 is applicable when computing the ninety (90) day period of 11 U.S.C. § 547(b)(4)(A). Under rule 9006, the date of the transfer is excluded, but the date of the petition is included. *In re Grimaldi,* 3 B.R. 533 (Bkrtcy.Conn.1980); *In re Mailbag International, Inc.,* 28 B.R. 905, 10 B.C.D. 496 (Bkrtcy.Conn.1983); *Harbor National Bank of Boston v. Sid Kumins, Inc.,* 696 F.2d 9 (1st Cir.1982); *Bell v. West,* 44 F.2d 161 (4th Cir.1930); *4 Collier on Bankruptcy,* para. 547.28 at 547–109 (15th ed. 1982). Consequently, a transfer made on January 31, 1983 would be outside of the ninety (90) day period but transfers made on or after February 1, 1983 would be included.

■ Under 11 U.S.C. § 547(e)(2)(A), a transfer is considered to be made when it "takes effect" between the transferor and the transferee if the transfer is "perfected" within ten (10) days. The Defendants contend that the judgment lien was "made" on January 31, 1983 because the judgment lien "took effect" between the Defendants and

the Debtor on January 31, 1983 when the consent judgment was executed and was "perfected" within the ten (10) day grace period by docketing on February 7, 1983. The consent judgment, they argue, was a contract creating the lien. Under North Carolina law, however, no lien is created by a judgment until the judgment is docketed. North Carolina General Statute § 1–234 says that "upon filing a judgment roll upon a judgment affecting the title of real property ... it shall be docketed in the judgment docket of the Superior Court ... and is a lien on the real property in the county where the same is docketed of every person against whom any such judgment is rendered, and which he has at the time of the docketing thereof in the county in which such real property is situated...." Mere rendition of a judgment does not constitute a lien. *Slocumb v. R.R.,* 165 N.C. 338, 81 S.E. 335 (1914); *Osborne v. Board of Education,* 207 N.C. 503, 177 S.E. 642 (1935). A judgment lien in North Carolina is neither created nor perfected until it is docketed. There is no lien on personal property in North Carolina until levy. N.C.G.S. § 1–313(1); *Community Credit Co. v. Norwood,* 257 N.C. 87, 125 S.E.2d 369 (1962).

■ At best, the consent judgment when executed on January 31, 1983 created the possibility that a lien would take effect in the future, but until docketing there was no lien. The Defendants rely on the case of *Harbor National Bank of Boston v. Sid Kumins, Inc.,* 696 F.2d 9 (1st Cir.1982) but that case involves a Massachusetts statute which permits the effect of an attachment to relate back after perfection. There is no such provision with respect to a judgment lien in North Carolina.

The Defendants' judgment lien, therefore, took effect on February 7, 1983 and the transfer was made within ninety (90) days of bankruptcy.

Although the evidence does not show the specific dates of the two $800.00 payments, it is clear that they were made on or after February 1, 1983 which is included in the ninety (90) day period preceding bankruptcy.

All the elements of 11 U.S.C. § 547(b) have been proven and the Defendants' judicial lien and the two $800.00 payments received by the Defendants should be avoided. An appropriate judgment shall be entered.